Chambers *v.* Ellis, Inc., Appellant.

Argued October 6, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Louis Wagner,* and with him *Richard A. Smith* and *Thomas J. Clary,* for appellant.—There was no duty on the defendant to actively protect the minor from the obvious dangers of his intentional act and wilful trespass. Oil City Bridge Co. v. Jackson; Thompson v. Railroad Co. 218 Pa. 444; Rhad v. Duquesne Light Co. 255 Pa. 409.

*Thomas I. Guerin,* for appellee, cited: Kreiner v. Straubmiller, 29 Pa. Superior Ct. 505; Sheplan v. Kramer Co., 272 Pa. 518; Euler v. Pittsburgh, 85 Pa. Superior Ct. 542.

OPINION BY CUNNINGHAM, J., January 28, 1932:

Preparatory to laying a water main in Lena and Rittenhouse Streets in the City of Philadelphia, the

defendant corporation distributed along the east curb of the first named street a number of 24-inch iron water pipes, twelve feet in length and weighing about 800 pounds. Generally a single line of pipe was placed along and against the curb, but at the corners several sections were placed outside of, parallel with and touching those immediately against the curb, thus forming a double row for a short distance. The cartway of Lena Street was paved with brick and its crown was approximately two inches higher than the grade at the curb. The pipes were not blocked or secured in any way; they were kept in place only by their weight and the slightly ascending grade. St. Vincent's Parochial School is located at the southeast corner of Lena and Rittenhouse and there are several other public schools in the immediate vicinity. Soon after the pipes had been distributed, children attending these schools began playing in, around and over them. A favorite amusement for the boys was to push the outside pipe of one of the double rows up to the crown of the street and let it roll down against the pipe remaining at the curb, in order to "bang" one against the other.

During the noon intermission on November 12, 1925, Walter J. Chambers, the nine-year-old son of the plaintiff, while engaged with eight or nine companions in this sport, suffered the fatal accident which gave rise to this litigation. The lad "got up on the pipe" which he and his playmates had pushed some distance toward the middle of the street; as it rolled or was pushed back, with Walter walking or running upon it, he attempted to jump upon the stationary pipe, slipped, lost his balance, fell between the two pipes and received injuries from which he died within a few moments. His father, alleging that defendant had been negligent in placing the pipes upon a highway in front of a public school without taking adequate measures to prevent them from rolling, or being rolled or pushed

about, and in permitting them to remain there a month without warning of any kind to the pupils, brought this action to recover damages for the death of his son. It was also suggested that the period elapsing between the distribution of the pipes and the accident, during all of which time they were used by the children in their play, was sufficient to visit defendant with constructive notice that they were being so used.

There was no controversy about the facts; defendant offered no evidence but submitted a point for binding instructions; the trial judge, SMITH, P. J., refused the point and submitted the question of defendant's negligence to the jury in a charge no portion of which is assigned for error. The jury awarded plaintiff damages in the sum of $1,500; defendant filed three motions—(a) for judgment n. o. v., (b) a new trial, and (c) a reduction of the verdict to $233, the amount of the funeral expenses incurred by plaintiff. The court in banc, in an opinion by LAMBERTON, J., denied defendant's motions and directed judgment on the verdict; hence this appeal by defendant.

The questions raised by the assignments are whether appellant was entitled to binding instructions and, if not, whether there was sufficient evidence to sustain that portion of the verdict which is in excess of the funeral expenses. The case was not free from difficulty for a jury, but our inquiry is whether the plaintiff submitted a case entitling him to go to that tribunal.

We have been furnished with comprehensive and able briefs on both sides. Many of the cases cited and discussed may be eliminated as inapplicable under the evidence; for instance, those relating to attractive and inherently dangerous agencies, as well as those in which a child has been a trespasser upon private property, of which Thompson v. Railroad Co., 218 Pa. 444, a turn-table case, is an example. Plaintiff's claim to

recover is based upon the allegation that appellant created a nuisance by placing upon a public highway instrumentalities attractive to children and potentially dangerous, without properly safeguarding them. The playing by plaintiff's son upon the pipes may be considered a trespass upon appellant's personal property, but, in view of his age, such trespass will not bar plaintiff's right to recover.

There was evidence here that it was "the custom or usual practice of contractors in connection with the laying of iron water pipes or sewer pipes in the streets of the City of Philadelphia" of the size of these pipes to insert a "chock" or wedge under each end "to keep them from moving." This testimony distinguishes the case at bar from many of those cited and relied upon in behalf of appellant and each case, as it arises, must necessarily be disposed of upon its own governing facts. Preston v. Phila., 249 Pa. 266, is urged as authority for judgment n. o. v. In that case the entering of a nonsuit was affirmed but an examination of the reasons stated by the court discloses that the proofs for the plaintiff were lacking in essential elements here present. A detailed discussion of the numerous cases cited would serve no good purpose as we agree with the court below that the principles announced by this court in Euler v. City of Pittsburgh, 85 Pa. Superior Ct. 542, are applicable to and control the disposition of this branch of the present case. That was a case in which city employes left a reel of cable, weighing approximately 1,000 pounds, unblocked upon the sidewalk of a city street and a small child was injured while he and his companions were playing with it. True, in that case it "was admitted that it was customary to block such reels when left standing on the street, both to hinder their rolling away of their own force and to prevent their being rolled by children to whom they are usually a source of interest and at-

traction, manifested by crawling up on top and rolling them out in the street." Here, the evidence that it was the usual custom to block pipes of the size and weight now involved, when left on the street, was uncontradicted.

Another argument for appellant is that no injury would have been caused if the pipes had been permitted to remain where they were placed and the effective cause therefore was the willful and persistent effort of the children in pushing the outside pipe into the cartway, coupled with the reckless and heedless act of the boy in attempting to ride upon the rolling pipe; but, as stated in the Euler case, the failure to block or make secure a potentially dangerous appliance is the proximate cause of the injury resulting to children playing with it. Reference may also be made to Taylor et al. v. DiSandro, 102 Pa. Superior Ct. 258, a case in which one of the plaintiffs, a young boy, was injured through the explosion of a dynamite cap thrown into a fire by a companion and in which it was contended by the contractor, charged with negligence in leaving the caps in an exposed place, that even if the explosives came into the possession of the boys through his negligence the proximate cause of the injuries was the independent intervening act of the lad who threw them into the fire. This court, upon the authority of our Supreme Court, said that "negligence may be the proximate cause of an injury of which it is not the sole or immediate cause, and that where the defendant's negligence concurred with some other event to produce the injury, so that it appears that without such negligence it would not have occurred, and both circumstances are closely connected with the injury in the order of events, the defendant is responsible though his negligent act was not the nearest cause in the order of time."

An additional contention is that plaintiff should not

be permitted to recover because he stated in his testimony that he had frequently noticed school children "crawling in and out and running over the top of" the pipes but did not go further and testify that he had warned his son against playing with them or had taken any other measures to protect him. He was not interrogated about the matter, nor was this question raised below. We are not persuaded appellant's argument is applicable in the case of a child nine years of age. The citation relied on, Westerberg et al. v. Railroad Co., 142 Pa. 471, was a case in which the parents frequently permitted children two and four years old to walk along a railroad track.

Upon consideration of this record, we are of opinion that the question of appellant's negligence was for the jury and could not properly have been ruled in its favor as a matter of law. This disposes of the assignments complaining of the refusal of its point and denial of judgment n. o. v.

Appellant's final contention is that there was no evidence to sustain a verdict in excess of the amount of the funeral expenses. The jury was given the proper measure of damages, namely, the possible return plaintiff might have received from the earnings of his son, if he had lived, between the ages of sixteen and twenty-one, less the expenses of his board, clothing and maintenance from the age of nine until his majority. In Wilson v. Consolidated Dressed Beef Company, 295 Pa. 168, cited for appellant, there was an entire lack of any proof of a money loss; indeed, it was conceded by counsel for the plaintiff that, in view of the social position of the parents, the minor would not, in all probability, have earned any money previous to attaining his majority. Moreover, the writer of the opinion added: "We are mindful of the cases which hold that the health of the child and the situation in life of the parents may afford proof of the probable prospective

earnings of a child.'' In the case at bar plaintiff was entitled to recover the amount of his pecuniary loss if the award was supported by competent evidence. Exactly what character of evidence should be considered sufficient in a given case cannot be prescribed by an inflexible rule. The financial status of the family —whether it is such that the father would naturally put the child to work upon the completion of the period of compulsory education and collect its wages—the occupation of the father, the age and health of the child and its probable earning capacity with a limited education, and like matters, are proper items for consideration. Here there was evidence that the father had been employed as a truck driver, delivering building materials, but was out of work at the time of the trial and that the boy for whose death damages were sought was in perfect health and ''of good size and build.'' Another son, eighteen years of age at the date of trial, was a witness and testified that he was not going to school, nor was he employed. No reasons were stated for the unemployed status of the father and brother, but there was no indication in the evidence that it was attributable to a disinclination to work. The nature and sufficiency of proof in cases of this kind were fully considered and stated for this court by HEAD, J., in McCleary v. Pittsburgh Railways Co., 47 Pa. Superior Ct. 366, and Ginocchi v. Pittsburgh and Lake Erie Railroad Co., 283 Pa. 378, may also be cited. Counsel for appellant correctly assert there was no evidence in this case of the probable cost of maintenance of the minor, but, as remarked in the Ginocchi case (p. 381), such evidence is not absolutely essential and, if offered, ''would be largely a matter of approximate cost, or, in other words, a guess.'' Material and relevant facts, susceptible of affirmative proof, were shown in this case and we cannot say there was no evidence to support this verdict, which, as the

court below has said, "does not seem excessive." Under such circumstances, we may not exercise our power (Wilson v. Consolidated Dressed Beef Co., supra), to strike from the judgment items unsupported by evidence; if we deemed the evidence insufficient the remedy would be a new trial, but we are not convinced that it was insufficient. Our conclusion is that no reversible error was committed in disposing of this case.

Judgment affirmed.