## Backenstoe et ux. v. City of Harrisburg

*James G. Hatz*, for plaintiffs; *Paul G. Smith*, for defendant.

WICKERSHAM, J., December 13, 1932.—The plaintiffs claim damages for the death of their 15-year-old son, who was killed November 21, 1931, by the fall of a flagpole while he was attending a football game held on the property of the defendant on an island in the Susquehanna River, opposite Harrisburg, Pa., locally known as "The Island", a section of which is maintained by the defendant as an athletic field. The jury returned a verdict of $417.10, whereupon the plaintiffs filed a motion for a new trial, alleging that the verdict was grossly inadequate.

The plaintiffs proved burial and other expenses amounting to $698.35. The jury did not allow all of this claim. The death of their son required the plaintiffs to purchase a cemetery lot for $75; they also had a contract for the purchase of a small monument and marker, which would cost $300. The jury very properly did not allow all of the last two items but evidently apportioned them, and about that there is no complaint.

It is well established that the plaintiffs were entitled to recover the present worth of the earnings or the present worth of the probable value of their son's services until he reached the age of 21, less what the parents would be required to pay for his maintenance: Gaydos et al. v. Domabyl, 301 Pa. 523, 524, 533 (opinion by Mr. Justice Kephart) ; Rice v. Erie R. R. Co., 271 Pa. 180; Chambers v. Ellis, Inc., 104 Pa. Superior Ct. 41, and many other cases cited by Mr. Justice Kephart in the above-cited opinion. We instructed the jury very carefully, we think, with respect to the measure of damages to which the plaintiffs were entitled because of the loss of their son. The jury disregarded our instructions and did not allow anything to the parents for such loss. In this we think they erred.

In Hammaker v. Watts Township, 71 Pa. Superior Ct. 554, it was held that a verdict fixing the pecuniary value of the child's life at the amount expended for its burial is so unreasonable and disproportionate to the value of human life that it raises an inference that it must have been influenced by partiality or prejudice or some misconception of the law or the evidence; in such case it is the duty of the trial judge, in the exercise of his judicial discretion, to award a new trial, and failure to do so constitutes reversible error.

In Gilmer et al. v. Gettys, 35 Dauph. Co. Repr. 248, this court held: "It is well settled that relief will be granted where the finding of the jury is grossly inadequate and the compensation given for the injuries entirely disproportionate to that proved to have been sustained." A new trial was awarded.

In Kapralik v. Lichletier, 28 Dauph. Co. Reps. 192, it was held (syllabus): "When the verdict of a jury is, in the opinion of the trial judge, against truth and justice and shocking to the judicial sense, a new trial should be granted." Many other cases of like nature might be referred to but we think these are sufficient.

While the testimony was conflicting, the verdict of the jury established very clearly that there was negligence on the part of the defendant in failing properly to inspect the flagpole erected by the defendant some eight years prior to the accident at or near the athletic grounds. There was nothing in the evidence to indicate contributory negligence on the part of the son of the plaintiffs who was killed by the fall of this pole.

It appeared from the evidence that the plaintiff, George F. Backenstoe, is employed by the Commonwealth of Pennsylvania as the fireman at the highway storage sheds; his family consisted of his wife, the plaintiff, Laura E. Backenstoe and six children: Mark, aged 9, attending public school; John, killed by the pole, who was 15 years of age at the time of the accident which resulted in his death, and who was a student at the Edison Junior High School; Paul, aged 19, who graduated from the junior high school when about 18, and thereafter worked about half time for an iceman at $18 or $19 a week; Anna, aged 20, who worked off and on, not regularly, but probably half time, at a shoe factory, at $10 a week; Mary, aged 22, who worked about half time at the Telegraph Press, at $11 a week; and Levi, aged 25, who did not work regularly.

The plaintiff, Laura E. Backenstoe, testified that the children paid about two thirds of their earnings to the parents in order to assist in maintaining them, and that the children retained the other one third for their own personal use. She further testified that she had never figured the cost of boarding a child by the week. Both plaintiffs testified that due to their financial condition the several children, as they became 16 years old and had finished junior high school, went to work, and that it was their intention also to put John (the deceased) to work when he graduated from said junior high school in June 1932.

It also appeared from the testimony that John, the deceased, was a healthy, strong, active boy, about 5 feet 7 inches tall, who had missed but 1 day of school in 5 years, and only 1 day the sixth year; that he was always ready and willing to do errands, and that previously he had worked in a grocery store on Saturdays, and for two seasons before his death on an ice truck in the summertime. The plaintiffs were of opinion that John would have done just as well as the other children if he had lived.

We can recall no case in which the evidence so strongly showed the probable value of the services of the son of the plaintiffs. The family of these plaintiffs seemed to be all working together for the common good and all who were working contributed to the support and maintenance of the family; and it requires no citation of authorities to show that had John, the deceased, reached the age of 16 the plaintiffs, his parents, would have been entitled not only to two thirds of his earnings but would have had a legal right to all of his earnings until his majority; and the fact that he had already been employed summers at a substantial wage, considering his age, showed the pecuniary loss arising from his death was not an insignificant one.

We have examined with care the many cases cited by the city solicitor in his carefully prepared brief; we think they do not apply to the instant case. If the jury had awarded a substantial sum to the plaintiffs for the financial damage they sustained because of the death of their son there would be some force in the arguments of the city solicitor that the verdict was substantial

and should not be disturbed; but the jury did not allow anything for the present worth of the loss of the services of the plaintiffs' son, John, who was killed because of the negligence of the defendant. We think there is here a clear distinction to be drawn between a verdict for substantial, as contradistinguished from adequate, damages, but in the instant case no damages whatever were allowed and the verdict therefore was neither substantial nor adequate. We think that this failure on the part of the jury was in disregard of our instructions and in disregard of the plaintiffs' rights as expressed in the decisions from which we have quoted and many others which might be cited. The verdict in the instant case shocks the conscience of the trial judge and therefore the motion for a new trial must be allowed.

And now, December 13, 1932, the motion of the plaintiffs for a new trial is allowed.

From Homer L. Kreider, Harrisburg, Pa.