Williams et al. *v.* Overly Manufacturing Company, Appellant.

Argued April 21, 1943. Before Keller, P. J., Baldrige, Stadtfeld, Rhodes, Hirt, Kenworthey and Reno, JJ.

*R. E. Best,* of *Smith, Best & Horn,* for appellant.

*Fred B. Tresch,* of *Kunkle, Trescher & Snyder,* for appellees.

OPINION BY RENO, J., September 29, 1943:

Minor plaintiff, John E. Williams, Jr., nine years old, was injured as a result of a fall through a skylight constructed upon a roof of defendant's factory premises at the southeast corner of Otterman and Washington Streets, in Greensburg. The plant was built upon land bounded on the north by Otterman Street, on the west by Washington Street, on the east by a cement alley, on the south partly by lands of other owners from which it was divided by a fence, and on the southeast by a school playground. The front, and northern portion of the plant was on Otterman Street, and the buildings housing the various departments covered the remainder of its land, except for the southwestern portion thereof, which was a yard or court about 90 feet in length, along Washington Street, and 50 feet in depth to the east. The yard was bounded by a high board fence along Washington Street, on the west, and by a fence along lands of others, on the south. Along the northern and eastern sides of the courtyard were defendant's buildings, which continued northward to Otterman Street, and eastward to the

cement alley. A driveway led into the courtyard from Washington Street.

The route taken by minor plaintiff, immediately prior to his fall through the skylight, took him across two roofs and a portion of the third roof of the three buildings located between the courtyard on the west and the cement alley on the east. The three roofs had varying elevations. The westernmost roof was 34 feet wide (west to east), with its comb 24.6 feet above the floor level. The edge of this roof was 17.4 feet from floor level, and the top of the comb was 7.2 feet above the edge of the roof. The distance from the western edge of the roof to the top of the comb was 17.35 feet, and the distance to the eastern edge was likewise 17.35 feet. The edge of the slate roof of the adjoining building to the east was higher, and the comb of that roof was about 10 feet above the edge. The third and easternmost roof contained the skylight through which minor plaintiff fell. The top of the skylight was four feet ten and one-half inches below the eaves of the second roof, and four feet three and one-half inches above the bottom of the skylight, which rested on the roof. The comb of the skylight was constructed of galvanized iron slanting down on each side a distance of one foot four inches. One-quarter inch rib wire glass sections measuring one foot eight and one-half inches by six feet long, made up the skylight, which continued in metal a distance of two feet eight and one-half inches to the bottom, on each side. The lights were approximately 22 feet above the first floor level.

On the afternoon of the accident, minor plaintiff, John, his younger brother, Bobby, age four and one-half years, and his cousin, James Williams, age ten, were on their way to plaintiffs' home and then to the movies. Passing the yard of defendant's plant on Washington Street, the boys were throwing snowballs. They saw a ladder leaning against the building at the eastern

edge of the yard. James suggested they take a short cut over the roofs to the cement alley and then to plaintiffs' home on Depot Street. The three boys entered upon defendant's premises through the driveway, crossed the yard and climbed the ladder seventeen and one-half feet to the edge of the westernmost roof, Bobby first, James second and then John. Next they clambered more than seventeen feet up the one side to the comb and lowered themselves a like distance down the other side. Continuing their precipitous course they ascended the comb of the slate second roof stepping upon, and raising themselves by, metal projections fixed into the roof, such as are commonly placed upon roofs to prevent snow slides, and then lowered themselves on the other side by means of like metal projections placed upon the eastern side of the roof. James was the first to lower himself on to the metal top of the skylight almost five feet below. He then put Bobby on his back, went down the skylight to the roof floor and turned around to get the minor plaintiff. All James saw was a hole in the skylight glass, through which he could see John lying on the concrete floor below. James did not see John pass through the skylight and John had no recollection of what happened after he reached the end of the second roof, or while walking on the metal frame of the skylight. The record fails to disclose how he came to fall through the glass.

Although none of the three boys had ever been on the roof before, there was evidence that children had been seen on various portions of the roof, most of them on the roof of the rear portion of the building to the north of the playground, and also on that portion of the roof adjoining the alley. It was possible to reach the roof from the rear loading platform through an open space, or from the low roof of sheds in the courtyard, as well as by the ladder, which plaintiff used to reach the roof. Defendant's officers and employes insisted they ordered children off the premises whenever they

saw them, but plaintiffs' witnesses testified that children were seen on the roof and were allowed to remain without objection from employes then present. "No trespassing" signs were posted about the premises. There was no evidence that children had ever been seen at or upon the skylight, or that the perilous short cut over the three roofs had ever been taken before by other children.

The jury returned verdicts against defendant in favor of minor plaintiff and his parents. The court below overruled defendant's motion for judgment n.o.v. Defendant appeals. The question is: Was there sufficient evidence of defendant's negligence to support the jury's verdict?

The court below concluded that there was sufficient evidence. It said: "The knowledge of the defendant that children used the roof of its building as a place for play, coupled with the invitation, implied to a child, in carelessly leaving a ladder outside the building, made the defendant liable for those dangers which were incident to and to be expected from children playing in such a place." The defendant was held responsible for minor plaintiff's fall through the skylight, described as "so natural a consequence to a child playing in so dangerous a place."

We do not think the evidence justified the conclusion that the injuries suffered by minor plaintiff were the proximate result of any negligence on the part of defendant. No one saw minor plaintiff pass through the glass of the skylight, and the minor plaintiff testified that he had no recollection whatsoever of what happened after he was on the metal frame of the skylight. We do not know how this accident occurred. What we said in *DeFrancisco v. LaFace*, 128 Pa. Superior Ct. 538, 541, 194 A. 511, where a minor plaintiff fell from defendant's truck, is applicable here: "The burden of proving negligence in this case was upon appellants; it cannot be presumed from the mere happening of the

accident ...... All that appears here is that the child, together with three playmates, was on the truck, and a minute later was seen lying upon the ground to the rear of the vehicle. Did he lose his balance and fall off while playing, was he pushed off by one of his youthful companions, or did he intentionally jump off? The answer to these questions is purely a matter of conjecture, under the case stated. As the Supreme Court said in Sajatovich v. Traction Bus Co., 314 Pa. 569, 574, 172 A. 148, 'There must be some evidence to indicate *how* the accident occurred, and of that this record is entirely barren.' ...... While it is perhaps equally well settled that negligence may be shown by circumstantial evidence and inferred from the circumstances surrounding an accident, such evidence must create a reasonable probability that the accident resulted from defendant's negligence."

Even if we should assume that minor plaintiff accidentally fell, or slipped, or stepped upon the glass skylight, we are unable to find any basis for imposition of liability upon defendant. There is neither evidence, nor suggestion, that the skylight, or the roof was in a state of disrepair. Unless the roof and skylight were the sort of instrumentalities or conditions from which danger to children should reasonably have been apprehended, the so-called "attractive nuisance" doctrine should not apply.

In order to impose liability upon the possessor of land for bodily harm to young children trespassing thereon caused by a structure or artificial condition the Restatement, Torts, Vol. 2 §339(b) requires that "the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to children."

Our courts have likewise required that the condition be one which involves unreasonable risk of death or

bodily harm, and have applied the doctrine to various objects or conditions, e.g.: a movable railroad turntable, long used as a "merry go round" by children, which could have been easily and simply locked, and which wedged an 8 year boy between it and the wall in which it rotated: *Thompson v. Reading Co.*, 343 Pa. 585, 23 A. 2d 729; a car of a miniature railroad, used to haul cement blocks on a lot used by children as a playground, which was dangerously poised on tracks, without a stop block, at an incline, when set in motion caught a boy beneath it: *Hogan v. Etna Concrete Block Co.*, 325 Pa. 49, 188 A. 763; a road scraper which children had been following all day long, was parked on an open vacant lot, unlocked, untied and unattended and when one child turned a wheel, another was caught in the cogs: *Reichvalder v. Boro. of Taylor*, 322 Pa. 72, 185 A. 270; a dangling live wire carrying high voltage current, within tempting reach of boys who were wont to climb on the ledge of a monument in a public park, injured a boy who jumped and grabbed the unprotected wire: *Novak v. Ford City Borough*, 292 Pa. 537, 141 A. 496; unguarded and unprotected moving wheels and ropes, which were used for lifting coal in a public playground and picnic ground, trapped and injured a little boy four and one-half years old: *Millum v. Lehigh & Wilkes-Barre Coal Co.*, 225 Pa. 214, 73 A. 1106; beer barrels were unlawfully piled on a sidewalk, in pyramid formation and a child climbing them was injured: *Kreiner v. Straubmuller*, 30 Pa. Superior Ct. 609; planks insecurely and improperly piled, toppled and killed a child playing thereon: *Balser v. Young*, 72 Pa. Superior Ct. 502; iron pipes piled along the curb of a street without wedges to hold them, were moved by a boy who was injured: *Chambers v. Ellis, Inc.*, 104 Pa. Superior Ct. 41, 158 A. 583.

Of course, young boys are naturally inclined to climb trees, walls, fences, gates and all kinds of commonplace

objects, and, recognizing this, it has been held that "It would be unjust, not to say absurd, if, upon children being injured by reason of falls or other accidents in the course of such activities, responsibility should be fastened upon the owners of these or similar innocent objects. Such a liability could not be guarded against, nor would it be justified by the application of any logical concept of negligence:" *Bonczek v. Philadelphia,* 338 Pa. 484, 487, 13 A. 2d 414.

Thus in the following cases, where the objects or conditions were considered natural or commonplace, or not inherently dangerous, liability was denied. In *Gillespie v. McGowan,* 100 Pa. 144, where an eight year old boy drowned in an uncovered deep well, on an unfenced lot where children played, the court said (p. 151): "We all know that boys of 8 years of age indulge in athletic sports. They fish, shoot, swim, and climb trees. All of these amusements are attended with danger, and accidents frequently occur. It is part of a boy's nature to trespass, especially where there is tempting fruit, yet I never heard that it was the duty of the owner of a fruit tree to cut it down because a boy trespasser may possibly fall from its branches. Yet the principle contended for by the plaintiff would bring us to this absurdity if carried to its logical conclusion." In *Ansell v. Philadelphia,* 276 Pa. 370, 120 A. 277, where a boy drowned in a pond of water formed by springs on land of the city, the court said (p. 371): "A pond, artificial or otherwise, does not differ from lakes and streams found everywhere, all of which are attractive to children and present common dangers. The owner of premises containing something attractive to children is not always liable in damages because of injuries to one yielding to the attraction; it depends upon the character of the thing in question, and a pond of water, guarded from the roadway like the one under consideration, cannot properly be placed in the same

category with dangerous machines, electrical appliances and similar things." In *Dolena v. Pittsburgh Terminal Coal Co.*, 324 Pa. 228, 188 A. 112, where a seven year old boy drowned in a water tank in which boys were wont to swim, the court said (pp. 229-230) : "The defendant had the right to maintain the tank on its property and could not be required to anticipate that a lad of seven years who could not swim would climb up and fall into it. We think it would not even be contended that had the boy climbed the tank and fallen from it to the ground, defendant would be liable. It cannot be said that the tank comes under the much distorted term, 'attractive nuisance.'" In *Guilmartin v. Philadelphia*, 201 Pa. 518, 51 A. 312, where a boy swung upon a gate which fell upon him, the court said (p. 520) "...... the city was not required to anticipate and guard against dangers which might result from the improper use of objects safe in themselves and for the use for which they are designed. There were many objects on this property which a childish impulse might make a source of danger. But if a child had climbed a tree that had a decayed limb, or an insecurely fastened water spout, or on the roof of a low building that would not sustain his weight, and been injured, we should not think of holding the city liable. The gate was apparently strong enough for the use to which it was put. It was secure if used properly, and there was no danger of its falling if touched or run against. It was unable to sustain an added weight of fifty or sixty pounds."

In *Nichol v. Bell Telephone Co.*, 266 Pa. 463, 109 A. 649, where a five year old boy caught his foot on a telephone wire strung along a fence he was climbing, the court said (p. 469) : "Defendants have been held liable for maintaining dangerous agencies in places known to be frequented by children, such as unguarded machinery, exposed live wires or explosives, open trap

doors or pits, fires, etc.; but in each of these cases there was present a real danger such as under the circumstances should have been foreseen and guarded against. No case has been called to our attention, and we have found none, where a legal liability has been predicated because of injury by a thing so apparently innocuous as a dead wire upon the side of a fence. Had it been a live wire the case would be entirely different. As has been said, 'wisdom after the event is easy,' but there was nothing in the situation here by which such an injury could reasonably have been anticipated." And (p. 470) : "The wire, as it rested along the fence, was not in itself inherently dangerous, nor in any sense an attractive appliance; and the rule as to the latter only applies where the owner of land brings or permits thereon something of an artificial nature, which is both attractive and dangerous to children; then he is bound to use reasonable care for their protection. An owner is never held negligent for failure to anticipate injury to children or adults from appliances not dangerous nor likely to become so." In *Dornick v. The Wierton Coal Co.*, 109 Pa. Superior Ct. 400, 167 A. 617, where two boys were drowned in a reservoir situated close to a playground, the court said (p. 404) : "Nor in our view, does this case come within the attractive nuisance doctrine, as the reservoir was not inherently dangerous. It was not an object or instrumentality, by which, if left unguarded, a boy, with his natural curiosity to investigate, may, by playing with it, setting it in motion, or running against it, sustain an accident. Of course, a boy could and did fall into it, but such an accident may occur in any pond or stream." In *Brown v. Scranton*, 313 Pa. 230, 169 A. 435, an eleven year old girl, in order to take a short cut to a drinking fountain, accessible by a longer route known to the child, climbed a wire fence which separated two parts of a public playground, fell and was injured. In *DeFrancisco v. La-*

*Face,* supra, a boy played on, and fell from, the back of a truck which was parked in the street.

In *Bonczek v. Philadelphia,* supra, the Supreme Court recognized that an object, harmless in itself, i. e., a park bench, might become dangerous to children playing upon it, when permitted to fall into a state of disrepair. In *Nichol v. Bell Telephone Co.,* supra, the court emphasized the fact that the wire was safe and protected; in *Brown v. Scranton,* supra, that the fence was "firmly constructed and entirely sufficient for the purpose for which it was intended"; in *DeFrancisco v. LaFace,* supra, that the truck was not shown to have been "negligently parked or that there was anything inherently dangerous about its construction." So too in the case now under review, we find no evidence of any defective condition in the roof or skylight, which in any way contributed to minor plaintiff's unfortunate injuries.

A case somewhat analagous is *Heba v. Seattle School District,* 110 Wash. 668, 188 P. 776, where a twelve year old boy and his companion climbed on to an iron fence and thence up a fire ladder and on to the roof. Thinking someone was going to chase them off, the boys started running. The injured boy ran along a cornice looking for a way to descend. His foot caught on a projection and he fell to the landing below. In denying liability, the Supreme Court of Washington said (p. 777) : "Here the boy found access to the ladder by means of the railing or fence, and the evidence shows that they might also have reached it from the water table, which projects from the building all the way around at about the same height as was the railing, or, as others did, by climbing on one anothers' shoulders. When boys are intent on climbing they can usually find a box or barrel or some object near at hand from which to mount. Appellant was a bright, active boy of 12 years, used to climbing and admits that he knew the

358

danger of injury from falling. The ladder is a simple appliance, not inherently dangerous, and as a rule any child old enough to climb one has intelligence enough to realize that if he falls injury and pain will follow. Ladders are nearly as common as fences and trees, and to hold that a jury might find an ordinary ladder to be an attractive nuisance, under the doctrine of the turntable cases, would be to require every property owner having a fence or tree accessible to children at play to maintain a constant guard about them."

In the light of these cases, we cannot hold that defendant should have realized that his roof and skylight, maintained in a good state of repair, constituted a condition involving an unreasonable risk of death or bodily harm. To conclude otherwise would require every property owner to maintain guards or barriers sufficient to keep children off such natural and harmless objects as poles, fences, roofs, chimneys, skylights and porches found upon his property.

Judgments reversed and here entered for appellant.