**Renee Lucille WILLIAMSON and James L. Williamson, Appellants,**

v.

**Arnold A. WINFREY, d/b/a Jack Star Mail Route, Respondent.**

**No. 54060.**

Supreme Court of Missouri,
Division No. 2.

July 14, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 8, 1969.

Per Curiam Opinion Modified on Courts' Own Motion Sept. 16, 1969.

Gray & Friedman, Charles E. Gray, Robert F. Ritter, St. Louis, for plaintiffs (appellants).

Joseph H. Mueller, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for defendant-respondent.

LAURANCE M. HYDE, Special Commissioner.

Action for $17,500.00 for personal injuries to Renee Lucille Williamson, hereinafter called plaintiff, Count I; and for $7,500.00 for her husband for medical expenses and consortium loss, Count II. Verdict for defendant and plaintiff have appealed from the judgment entered.

Plaintiff's Volkswagen was struck by defendant's truck while she was making a left turn from Highway 50 into a driveway.

1. The court sustained an objection to this argument, but it shows what the prosecutor was trying to convey to the jury.

Defendant concedes error in Instruction No. 4 authorizing a verdict for defendant if plaintiff "failed to signal her intention to turn" (defendant having no evidence to support such submission); and also in sustaining defendant's objection to the portion of the closing argument of plaintiff's counsel relating to the failure of defendant's driver to sound the horn of his truck, this being supported by all the evidence. However, defendant contends these trial errors are immaterial because plaintiff was guilty of contributory negligence as a matter of law. Our view is that the alleged contributory negligence of plaintiff was a jury issue so we reverse and remand.

The collision occurred between 7:30 and 8:30 P.M., August 30, 1965. It was dark and had been raining. Plaintiff, with her three small daughters in the back seat, was waiting in the driveway of the Morris farmhouse for her husband who was discussing farm business with Morris, when a tractor trailer truck stopped on the north side of the highway after a loud clank and turned on its flashing lights. Plaintiff drove out of driveway to the east and stopped by the tractor unit to find whether the driver needed any assistance. Plaintiff stopped with the left wheels of her car on the pavement and the right wheels on the shoulder. After conversation with the driver she observed defendant's truck coming very far back. Plaintiff said she "pulled onto the highway, turned on my left turn signal and proceeded down the highway, proceeded to make a left turn" (at the Kemmer farm driveway on the north side of the highway) and "was struck by the oncoming truck from the rear." From defendant's truck she heard "no horn, no squealing brakes, nothing." Plaintiff had almost completed her left turn into the Kemmer driveway (front wheels on the north edge of the pavement) when her car was struck. Plaintiff's twelve-year-old daughter said she saw defendant's truck "one or two hills back" when plaintiff started to pull away from the disabled truck. She said when the truck passed the stalled tractor trailer, the truck driver was "turned around left in his seat" and appeared to be looking back at the stalled tractor trailer. According to plaintiff's measurements, the distance from the Morris driveway to the point where the cab of the disabled truck had stopped was 210 feet; and the Kemmer driveway was 150 feet east of that point. After the collision plaintiff's car was in the ditch 165 feet east of the Kemmer driveway and defendant's truck was 130 feet east of the driveway also in the ditch. Plaintiff did not know where defendant's truck was when all of the wheels of her car got on the pavement or when she started to make her left turn. Defendant's driver gave no signal before or after passing the disabled tractor trailer.

The driver of defendant's truck said he saw the marker lights on the disabled truck when he was "quite a little" to the west but did not see plaintiff's car until he topped a little rise which he estimated as four or five car lengths west (estimated between 40 and 50 feet or about the distance across the courtroom). However, he said he then also saw the truck driver on the pavement "over at the car talking" to plaintiff and said "he trotted back across the road to his truck * * * after I topped the hill." He said he had come over the hill at 55 miles per hour and then reduced speed to between 40 and 50 miles per hour. (He later said he topped the hill at 35 miles per hour having slowed when he saw the clearance lights on the truck). He said he "pulled to the middle of the road and went on through." He said he did not see the Volkswagen moving "until it was right in front of me," headed "into the driveway across the road"; and that "she had already crossed the eastbound section of the pavement." He did not "see her start from a stopped position and travel eastwardly for any distance before she started turning left." He further testified "Q. And in her moving that distance (from the tractor to the driveway) you at no time saw her? A. No sir, not until I hit her."

The negligence submitted by plaintiff was failure to keep a careful lookout. De-

fendant's truck driver's testimony aids plaintiff to make submissible case on that issue. If he could see the tractor trailer driver standing by plaintiff's car and then see him trot back to his tractor before his truck reached that point the jury could reasonably find he must have been more than 40 or 50 feet from it when he saw them even if his speed was only 35 miles per hour. Plaintiff could see the tractor trailer from the Morris driveway which plaintiff's evidence of measurements shows was 210 feet. Furthermore, although defendant's driver estimated the distance between the tractor and the Kemmer driveway to be 35 to 40 feet, plaintiff's measurement was 150 feet. Defendant's driver's testimony was that he never saw plaintiff's car again until it was headed into the driveway and plaintiff had evidence that defendant's truck driver was looking back at the tractor trailer while he was passing it. A reasonable inference is that defendant's driver never looked at plaintiff's car again after he saw the truck driver leave it and he undertook to go between the tractor trailer and plaintiff's car without slowing his truck any more or looking at plaintiff's car.

Defendant cites such cases as Branscum v. Glaser, Mo.Sup., 234 S.W.2d 626, holding no jury case where the plaintiff's husband, after stopping at an intersection, drove onto a main state highway in front of an approaching truck where he had a clear view of its approach for 1000 feet; and Myers v. Searcy, Mo.Sup., 356 S.W.2d 59, a left-turn case in which there was a defendant's verdict and a new trial was granted on the ground of error in an instruction. We held the instruction was not erroneous and ordered defendant's verdict reinstated, negligence of plaintiff in making a left turn having been properly submitted to the jury. Moore v. Quality Dairy Company, Mo.App., 425 S.W.2d 261, also cited, is a case where there was no left-turn signal given and a left turn was made after the plaintiff had given a signal to pass. The court said (425 S.W.2d, l. c. 264) "unquestionably a jury issue was presented, both on defendants'

negligence and plaintiff's contributory negligence." See also Highfill v. Brown, Mo.Sup., 340 S.W.2d 656, where there was a collision between a truck making a left turn and a car attempting to pass and the issues of negligence in making a left turn and in passing were held to be jury issues. See also Clevenger v. Walters, Mo.Sup., 419 S.W.2d 102, 107, 108, where it was held the plaintiff was not negligent as a matter of law in making a left turn from a state highway into a country road when there was a car behind her car which attempted to pass while she had the left-turn signal on. Our conclusion is that negligence and contributory negligence in this case were jury issues.

Judgment reversed and cause remanded.

PER CURIAM:

The foregoing opinion by LAURANCE M. HYDE, Special Commissioner, is adopted as the opinion of the court.

All of the Judges concur.

## ON MOTION FOR REHEARING OR TO TRANSFER TO COURT EN BANC

PER CURIAM:

In support of its motion for rehearing or to transfer to Court en Banc, defendant says plaintiff admitted she made a left turn without knowing where the truck was at the time she did so; and that plaintiff's evidence (the testimony of her daughter) showed the truck was very close when she made the turn. Defendant says we held in Huff v. Trowbridge, Mo., 439 S.W.2d 493, "on facts identical to those in the case at bar," that the plaintiff therein "was guilty of contributory negligence as a matter of law in making an abrupt left turn in front of a vehicle in the process of passing while proceeding in the same direction"; and in violating § 304.019, RSMo, V.A.M.S., by doing so. The Huff case was published in the South Western Reporter advance sheets after this case had been submitted, so we will consider it now.

There are some important differences between this case and the Huff case. In the first place, that case was tried by the court without a jury and the court was not required to decide the issue of contributory negligence as a matter of law. Our conclusion stated therein was the court did not do so. We said: "Liberally considered, the trial court here found contributory negligence as a factual matter." We held, under the review provided by Rule 73.01(d), V.A.M.R., this judgment was not "clearly erroneous" and stated our view likewise as a factual matter from the evidence that plaintiff "was guilty of negligence which directly contributed to the collision." Furthermore, in the Huff case the plaintiff never saw defendant's car and made an abrupt left turn from a state highway in daytime, where he could see six-tenths of a mile behind him. Plaintiff said he turned on his left turn signal light, "looked in the rearview mirrow and didn't see anybody." His car was struck by defendant's car, which was about to pass on his left, when he turned left abruptly to go on a country road. We said: "Plaintiff had no explanation for not seeing defendant sooner"; and found "that [Huff] traveled the last 200–300 feet on the highway without any further effort to discover oncoming or overtaking traffic." Moreover, it is not clear when Huff turned on his left turn signal while plaintiff herein said she did so when she started her car on the highway.

In this case, plaintiff knew that defendant's truck was coming and we consider there was a reasonable basis to find she was trying to get out of its way; and for her to believe her car might be struck if she did not move it from where she had stopped partly on the pavement. Defendant's truck driver was not staying on north lane of the highway, after passing the tractor, for purpose of passing plaintiff's moving car because he never did see it moving. Evidently his truck had not moved to the south (eastbound) lane of the pavement, because he said plaintiff "had already crossed the eastbound section of the pavement" when he hit her. Apparently defendant's driver thought he had passed between the disabled tractor trailer and plaintiff's car and never did look for her car. It would seem that plaintiff could reasonably assume that defendant's driver would keep a lookout and see her car ahead with its left turn signal operating. See Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, 21, and cases cited under Automobiles ☞206 in West's Missouri Digest. Under all the facts of this case, including the size and speed of defendant's truck, we do not consider it negligence as a matter of law for plaintiff to try to get out of its way by starting down the highway and turning into the first available driveway, having at all times her left turn signal operating. Our view is that plaintiff's negligence is a jury issue to be determined from consideration of all the facts and circumstances of this case.

Defendant's motion for rehearing or to transfer to the Court en Banc is overruled.