Devoid MITCHELL and Florence
Mitchell, Appellants,

v.

Rudy BUCHHEIT and Kenneth Buchheit,
d/b/a Buchheit Trucking
Service, Respondents.

No. 59805.

Supreme Court of Missouri,
En Banc.

Dec. 19, 1977.

Robert F. Ritter, St. Louis, for appellants.

Robert H. Burns, John H. Marshall, Clayton, for respondents.

John C. Milholland, Harrisonville, amici curiae.

MORGAN, Chief Justice.

After filing an opinion written by Stewart, J., the Court of Appeals, St. Louis District, pursuant to Rule 83.02 transferred the case to this court "for the purpose of [our] reexamining the existing law," relative to whether or not the surviving parents of a minor child, in an action for wrongful death, may recover for pecuniary benefits which they reasonably could have expected after majority of the deceased child.

Decedent was 19 years and 10 months of age, unmarried, and living with his parents when killed in an accident involving two motor vehicles. The parents instituted a wrongful death action; and, judgment was entered on a jury verdict in their favor for $12,500. Both plaintiffs and defendants appealed. Plaintiffs complain of the trial court's action in restricting evidence of damages to that period prior to decedent's majority; and, defendants assert error in the trial court's failure to direct a verdict in their favor for the alleged reason decedent was guilty of contributory negligence as a matter of law.

We now resolve the issues as though here on direct appeal. We do acknowledge, however, the opinion written by Judge Stewart from which we have quoted at length without benefit of quotation marks.

*Facts*

The collision which gave rise to this action occurred at about 4:45 a. m. on February 3, 1971, on Highway 61, a short distance north of its intersection with Highway WW in Pike County. Highway 61 is a two-lane highway. Each lane is about 11 feet wide with shoulders of four feet each. The road, in that vicinity, runs north and south. It had been raining, snowing and sleeting through the previous night. It was dark and there was a freezing mist falling at the time of the collision. The roads were iced.

Plaintiffs' decedent, an employee of the State Highway Department, had been called at about 9:00 p. m. on the night before to operate a department truck spreading salt and cinders. Decedent was accompanied by Lloyd Kuntz, who rode along as a helper. The truck was equipped with headlights, taillights, a revolving yellow light on top, and running lights. It also had three sets of directional signals: one set in the front of the truck, one just forward of the front door and one in the bed of the truck at the rear. When the directional signal is operated all three sets of signals will operate. If one signal fails to operate all will fail. When the bed is raised for spreading the taillight cannot be seen.

Decedent had been instructed to spread salt and cinders north beyond Highway WW and then to turn around at the driveway to the home of one Thomas and then move south spreading the southbound lane of the highway. The driveway to the Thomas home is on the west side of the road and is a private drive. During the salting operation decedent drove at a speed of about 25–30 m. p. h.

Defendants' employee, Francis Peer, was operating their tractor with a 40-foot trailer enroute from Perryville, Missouri, to Washington, Iowa, with a load of 735 feeder pigs. He was going north on Highway 61 at a speed of 45–50 m. p. h. He was first aware that there was a truck spreading salt ahead of him by reason of the condition of the road. The highway was melting off.

He first noticed this condition when he was about two miles from the site of the collision. When about half a mile from the point of collision, Peer first saw the highway truck about a quarter of a mile ahead of him.

When the truck driven by decedent was 200 feet from the Thomas driveway, he activated the left turn directional signal. As he approached the drive, he slowed his speed to 5–8 m. p. h.

Mr. Peer was unable to estimate the speed of the highway truck at any time while it was in his sight. When he was about 50 feet behind the truck, he pulled out to pass it. He did not see the left turn signal. He did not sound his horn. He was looking ahead for oncoming traffic. When the highway truck got to the Thomas driveway it made a left turn, and while in the turn the defendants' vehicle struck the left side of the highway truck at the left door. The left wheels of defendants' vehicle were about 4 feet off the highway at the time of impact. The vehicles locked and continued down the highway some 225 feet, primarily in the left lane. Plaintiffs' decedent was thrown from the truck and died as a result of the injuries. He did not make a statement before he died.

The defendants' driver testified on behalf of defendants by way of deposition. He testified that he was 50 feet to the rear of the highway truck when he pulled out to pass, and when he got into the left-hand lane he flashed his all-weather, high intensity lights twice by way of a hand switch on the dash.

### Defendants' Appeal

Defendants' sole contention is that plaintiffs' decedent was contributorily negligent, as a matter of law, in failing to see what looking would have revealed and in thereafter turning left when it was not reasonably safe to do so.

The burden of proving contributory negligence was upon defendants unless plaintiffs' evidence established it as a matter of law. The issue of contributory negligence is one of fact for the jury unless reasonable minds could draw only the conclusion that plaintiff was negligent. *Thompson v. Byers Transp. Co.*, 362 Mo. 42, 239 S.W.2d 498, 499–500[1–4] (1951).

Defendants relied heavily on the following portion of § 304.019, RSMo 1969:

No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein.

This portion of the statute was discussed in *Reed v. Shelly*, 378 S.W.2d 291, 297 (Mo. App.1964), wherein it was said:

Section 304.019 does not, in our view, prohibit a left turn unless the circumstances are absolutely free from danger, nor does it require the maintenance of a continuous observation to the rear prior to or during the making of a left turn.

Because of the death of plaintiffs' son there was no direct evidence that he looked or that he failed to maintain a proper lookout. The fact that the accident occurred does not require a finding that decedent failed to look at any particular time. *Ruediger v. American Bus Lines, Inc.*, 426 S.W.2d 4[10] (Mo. banc 1967). Where there is no direct evidence on the issue, the deceased is clothed with the presumption of due care. *Foley v. Hudson*, 432 S.W.2d 205, 209[6] (Mo.1968).

Defendants' driver testified that he pulled his rig out to pass when 50 feet from the highway truck. The jury could believe he was then going 50 m. p. h. or 10 times the 5 m. p. h. of the highway truck, and that the truck was then approaching and going into its left turn. The jury could have found that if decedent looked at any time after he activated the left turn signals up to the time he was committed to his turn, about the time defendants' truck started to move to the left to pass, he would have seen a vehicle traveling in its own lane with no indication that it was intending to pass.

The question of contributory negligence was for the jury. *Williamson v. Winfrey,* 444 S.W.2d 495 (Mo.1969), and *Wilkerson v. State Farm Mutual Automobile Ins. Co.,* 510 S.W.2d 50 (Mo.App.1974).

Defendants cite us to no case in which a left-turning motorist was held to be contributorily negligent as a matter of law. They rely primarily on *Huff v. Trowbridge,* 439 S.W.2d 493 (Mo.1969), which was carefully analyzed in *Williamson v. Winfrey,* supra. A further discussion here would serve no useful purpose. The judgment of the trial court is affirmed as to defendants' appeal.

### Plaintiffs' Appeal

As heretofore noted, plaintiffs contend that the award of $12,500 was inadequate, and that such an unacceptable result was caused by the trial court erroneously refusing to admit evidence or permit argument that circumstances were such that plaintiffs reasonably could have expected pecuniary benefits from their son after he reached majority. It is also argued that plaintiffs should have been allowed to give MAI 5.03 in a form with respect to damages as to include the bracketed phrase "[and are reasonably certain to sustain in the future.]" [1]

The Court of Appeals agreed with plaintiffs and would have remanded the cause for a new trial as to damages; but, being bound by the latest pronouncements of the substantive law by this court, ordered transfer. We agree that a reassessment of the issue is proper and necessary.

In this state,the Wrongful Death Act was enacted originally in 1855. It has been revised several times since, including 1879, 1905, 1955, 1967 and 1973 Amendments. Throughout, and to this date, the interpretation placed upon the statute by the courts of this state [2] was delineated best in *Oliver v. Morgan,* 73 S.W.2d 993 (Mo.1934), wherein this court stated, l. c. 997, that:

> "It is . . . clearly the law that the basis of the recovery [for the death of a minor child] is the value of the child's services to the parents during the child's minority, and that from this must be deducted the expenses of the support and maintenance of the child during that period * * * *Parsons v. Missouri Pac. R. Co.,* 94 Mo. 286, 6 S.W. 464 * * * So long as the statute permits a recovery in such a case of only the *pecuniary* loss to the plaintiffs, the plaintiffs must prove and the jury find an actual pecuniary loss in order to recover."

For the purposes of this discussion, we need not consider those provisions allowing a jury in assessing damages to take into consideration any aggravating circumstances attending the wrongful act.

The case of *Parsons v. Missouri Pacific Ry. Co.,* supra, relied on in the *Oliver* case, provided the predicate upon which the rule has continued to rest.[3] Therein, 6 S.W., the court said at 467:

> Under our statute a right of action can only accrue to the father or mother of a minor child . . . For the death of [an adult child the parent] has no right of action, and can recover nothing, although his life may have been in the past, and promised to be in the future, of almost inestimable pecuniary value to his parent. While the life of the [minor child] may never have been, and gives no promise ever to be, of any value to his parent, the life of the older may have been his parents' stay, hope, and support; that of the younger the care and burden; yet the law gives damages in the latter case, and none in the former. This distinction illuminates the meaning of the word 'neces-

---

1. MAI 5.03 did not have the effect of changing the law. It does not mention any restriction on recovery by the parents to the child's minority. However, it contemplates that ". . . the jury will be properly advised by the argument concerning details . . ." and the elements of damages for consideration. *Boten v. Brecklein,* 452 S.W.2d 86, 93 (Mo.1970).

2. An anomaly being *Sharp v. National Biscuit Co.,* 179 Mo. 553, 78 S.W. 787 (1904).

3. An earlier Supreme Court case, *Rains v. St. Louis, I. M. & S. Ry. Co.,* 71 Mo. 164 (1879), stated the rule without an analysis of the reason for the rule.

sary' used in the statute, and shows that the damages in the case in which they are given are not to be measured by the uncertain and supposititious value to be placed upon a life as such, but by a reasonably certain and fixed rule growing out of the relations existing between a parent and his minor child, and the corresponding duties, rights, and obligations of that relation. The law presumes the life of a minor child to be of value to his parent, because he is entitled to his services, and is responsible for his support during minority. He is necessarily injured by a wrongful act resulting in the death of such minor child, which thereby deprives him of the value of those services, and casts upon him the burden of legal liability for that support when deprived of the value of such services, enhanced by the additional expense of providing medicine, medical attention, and nursing during illness, and for funeral charges when he dies * * * It is the life of the son's minority, and not the life of the son, for which the parent is to be compensated. In the class of cases to which this belongs the field of inquiry is limited to a time certain, i. e., the majority of the minor . . .

The reasoning of the court in the *Parsons* case becomes obvious, i. e., if the statute did not recognize a cause of action in the parents for the death of an adult child surely damages recoverable for the death of a minor child could be calculated only to the time such child reached majority. Thus, the statute was interpreted as creating a right of recovery only for those whom the deceased was obligated to serve.

The statute was amended as seen in Laws 1905, page 135, (§ 5425, RSMo 1909) and survived as § 537.080(3). It provides, in part, that:

. . . if there be no husband, wife, minor child or minor children, natural born or adopted as hereinbefore indicated, or if the deceased be an unmarried minor and there be no father or mother, then in such case suit may be instituted and recovery had by the administrator or executor of the deceased and the amount recovered shall be distributed according to the laws of descent . . .

Recovery, therefore, was no longer limited to the parents in a wrongful death case involving a minor. An administrator or executor could recover as a trustee. Logically, no framework remained for the idea a deceased had to be legally obligated to furnish support to the beneficiary. It was sufficient if there existed "a reasonable probability of pecuniary benefit to one from the continuing life of another . . ." *McCullough v. W. H. Powell Lumber Co.,* 205 Mo.App. 15, 216 S.W. 803, 807 (1919).

Later cases, oddly enough, did not undertake to reassess the limitations created in the *Parsons* case, although doubts as to the validity thereof did appear. For instance, in *McCrary v. Ogden,* 267 S.W.2d 670 (Mo. 1954), this court, l. c. 676, stated: "Whether our past interpretations of the section, to the effect that recovery is limited to pecuniary loss and in the case of an infant, to the value of services during minority only, are basically correct, may be debatable—but we have consistently so construed the section." A further amendment to § 537.090 may be found in Laws 1967, at page 663, which reads, in part:

. . . in every such action the jury may give such damages . . . as they deem fair and just, with reference to the *necessary injury* resulting from such death, to the surviving parties who may be entitled to sue . . . (Emphasis added.)

Further amendments to § 537.080(2), in the same year, allowed parents a recovery for the wrongful death of an unmarried adult child. *Rogers v. Fiandaca,* 491 S.W.2d 560 (Mo.1973); Davis, Wrongful Death, 73 Wash.L.Q. 327, 342–3 (1973). There remained, however, the thought that "necessary injury" had to be equated with "pecuniary loss." Although not applicable to this case or dispositive of any issue presented by the parties, it must be noted that after amendment in 1973 § 537.090 calls for ". . . such damages as will fairly and justly compensate such party or

parties for *any damages* he or they have sustained . . ." The word "necessary" significantly is missing. The remainder of the amendment is persuasive, however, as to the intent of the Legislature and the logic of Judge Stewart's conclusion. It allows, in addition, such damages as the parties ". . . are reasonably certain to sustain in the future as a direct result of such death . . ."

For judicial efforts to avoid the harshness of the rationale of the *Parsons* case, see *Domijan v. Harp,* 340 S.W.2d 728 (Mo.1961); *Hartz et al. v. Heimos,* 352 S.W.2d 596 (Mo.1962); or *Mudd v. Quinn,* 462 S.W.2d 757 (Mo.1971). Similar cases are noted in Vol. 10, Mo.Dig., Death, and 

 We have concluded that the holding in the *Parsons* case is not tenable under the present statutory provisions, nor can it stand on its own logic. Parents, seeking to recover for the death of a minor child, should not be prohibited from trying to establish a reasonable probability of pecuniary benefit from the continued life of said child beyond the age of minority. We so hold, and thus shift Missouri from a minority to majority position as shown by the appendix attached hereto.

 Amicus curiae, in a most excellent brief, suggests that recovery should be had for tortuous loss of society and companionship. However, this question was not raised on appeal by the parties and we decline to review this added issue. Thus, the direction found in MAI 5.03 that [You must not consider grief suffered by plaintiffs.] remains a viable alternative for defendants as explained in paragraph 3 of the "Notes on Use."

The judgment heretofore entered is affirmed except as to damages and the cause is remanded to the trial court for a new trial on that issue only.

BARDGETT, HENLEY, FINCH, DONNELLY and SEILER, JJ., and SHANGLER, Special Judge, concur.

RENDLEN, J., not sitting.

## APPENDIX

The following 26 states represent the majority rule and allow damages for loss of contributions and benefits after majority age is reached. Each state sets the quantum of proof necessary to establish post majority benefits.

ARIZONA—(Rev.Stat.Ann. § 12–542) *Pacific Gas and Electric Co. v. Almanzo,* 22 Ariz. 431, 198 P. 457[7] (1921); *Inspiration Consol. Copper Co. v. Bryan,* 35 Ariz. 285, 276 P. 846 (1929) (value of benefits parents might reasonably have expected from the child after his majority.) ARKANSAS—(Stat.Ann. § 27–906–909) *St. Louis S. F. RR. Co. v. Perryman,* 213 Ark. 550, 211 S.W.2d 647[17] (1948) (reasonable expectancy of post majority benefits). CALIFORNIA—(Civil Pro. § 377) *Riley v. California Erectors, Inc.,* 36 Cal.App.3d 29, 111 Cal. Rptr. 459 (1973) (in addition to other factors—includes deprivation of comfort, society and protection of the child which the child may afford to parent). COLORADO—(Rev.Stat.Ann. § 13–21–201) *Herbertson v. Russell,* 150 Colo. 110, 371 P.2d 422 (1962) (benefits reasonably anticipated after majority). DISTRICT OF COLUMBIA—(DC Code Ann. § 16–2701) *Hord v. National Homeopathic Hospital,* 102 F.Supp. 792[7] (D.C.D.C.1952); *Reed v. Gulf Oil Corp.,* 217 F.Supp. 370 (D.C.D.C.1963) (expectancy of possibility of contributions after majority). ILLINOIS—(Rev.Stat. Ch. 70, § 2) *Wallace v. Rock Island,* 323 Ill.App. 639, 56 N.E.2d 636 (1944) (reasonable expectation of benefits after majority). KANSAS—(Stat.Ann. § 60–3203 and § 60–1903) *Corman v. W. E. G. Dial Telephone,* 194 Kan. 783, 402 P.2d 112 (1965) (probability of financial assistance after majority). LOUISIANA—(Civil Code Ch. 2 Article 2315) *Curry v. Fruin-Colnon Contracting Co.,* 202 So.2d 345 (Ct.App. La.1967) (probability of future support by child). MAINE—(Rev.Stat.Ann. tit. 18, § 2552) *Carrier v. Bornstein,* 136 Me. 1, 1 A.2d 219 (1938) (includes pecuniary benefits which would have accrued after majority). MARYLAND—(Ann.Code, §§ 3–901 through 3–904 (formerly art. 67 § 4) *Barrett*

v. Charlson, 18 Md.App. 80, 305 A.2d 166, 178 (1973). MICHIGAN—(Mich.Comp. Laws § 600.2922) Thompson v. Ogemaw County, 357 Mich. 482, 98 N.W.2d 620[4] (1959) (reversed prior cases to allow recovery for loss of reasonable expectation of support). MINNESOTA—(Stat. § 573.02) Luther v. Dornack, 179 Minn. 528, 229 N.W. 784 (1930) (benefits reasonably expected after majority). MISSISSIPPI—(Code Ann. § 11–7–13) Yazoo & M. R. Co. v. Beasley, 158 Miss. 370, 130 So. 499 (1930); Gordon v. Lee, 208 Miss. 21, 43 So.2d 665[4] (1949) (gratuities that parents had a reasonable expectation of receiving after majority). MONTANA—(Rev.Code Ann. § 93–2810) Burns v. Eminger, 84 Mont. 397, 276 P. 437 (1929) (on proper showing, reasonable expectation of benefits after majority). NEBRASKA—(Rev.Stat. § 30–810) Westring v. Schwanke, 185 Neb. 579, 177 N.W.2d 506[2] (1970) (contributions expected with reasonable certainty after majority). NEW JERSEY—(Rev.Stat. Title 2A:31–5) Gluckauf v. Pine Lake Beach Club, Inc., 78 N.J. Super. 8, 187 A.2d 357 (1963) (reasonable expectation of support and maintenance after majority). NEW YORK—(§ 5–4.3 Estates, Powers and Trust Law) Sutherland v. State, 189 Misc. 953, 68 N.Y.S.2d 553[16] (1947) (loss of probable benefits from life after majority); Fornaro v. Jill Bros. Inc., 42 Misc.2d 1031, 249 N.Y.S.2d 833, 839 (1964) Rev. on other grounds 22 A.D.2d 695, 253 N.Y.S.2d 771 (1964) (possibility of receiving further contributions in later life after majority of child). NORTH CAROLINA—(Gen.Stat. § 28A–18–3 (formerly § 28–174)) Rea v. Simowitz, 226 N.C. 379, 38 S.E.2d 194 (1946). NORTH DAKOTA—(Cent.Code § 32–21–02) Willert v. Nielsen, 146 N.W.2d 26[7] (N.D.1966) (loss of contributions reasonably expected after majority). OHIO—(Rev.Code § 2125.02) Cincinnati St. Ry. Co. v. Altemeier, 60 Ohio 10, 53 N.E. 300 (1899); Flory v. N.Y. Central Rd. Co., 170 Ohio 185, 163 N.E.2d 902[4] (1959) (if reasonable expectation that aid will continue in future after majority). OKLAHOMA—(Stat. Tit. 12, § 1053) Parkhill Trucking Co. v. Hopper, 208 Okl. 429, 256 P.2d 810 (1953); Rogers v. Worthan, 465 P.2d

431, 438[5] (Okl.1970) (reasonably expected after majority). SOUTH DAKOTA—(Code § 21–5–5) McCleod v. Tri-State Milling Co., 71 S.D. 362, 24 N.W.2d 485[13] (1946) (benefits reasonably expected after majority). TEXAS—(Rev.Civ.Stat.Ann. art. 4671 and 4675) Banker v. McLaughlin, 200 S.W.2d 699, 702[2] (Tex.Civ.App.1947) affirmed 208 S.W.2d 843 (reasonably anticipated contributions after majority); Wales Trucking Co. v. Kisener, 373 S.W.2d 266, 268[2] (Tex. Civ.App.1963) (financial contributions parents could reasonably expect to receive from child after majority). UTAH—(Code Ann. § 78–11–6, 7) Van Cleave v. Lynch, 109 Utah 149, 166 P.2d 244 (1946) (loss of benefits parents might reasonably have expected to have received after majority). VERMONT—(Stat.Ann. Title 14 § 1491–92) Allen v. Moore, 109 Vt. 405, 199 A. 257[1] (1938); Butterfield v. Community Light and Power Co., 115 Vt. 23, 49 A.2d 415[7–9] (1946) (on proper showing damages would include loss of reasonably expected pecuniary benefits accruing after minority). WISCONSIN—(Stat.Ann. § 895.04) Johnson v. Chicago & N. W. R. Co., 64 Wis. 425, 25 N.W. 223[1] (1885) (damages include reasonable expectation of pecuniary benefits even beyond majority age).

The following 6 states represent the minority jurisdiction which limit recovery to loss of services during minority only, usually upon the basis that a parent's legal right to services terminates at majority and any possibility of benefits thereafter is merely speculative.

FLORIDA—(Stat.Ann. 768.16–.27 (formerly 768.03)) Gresham v. Courson, 177 So.2d 33, 37[5], 41 (Fla.App.1965). INDIANA—(Ann. Stat. Title 34 § 1–1–2) Wallace v. Woods, 149 Ind.App. 257, 271 N.E.2d 487 (1971). IOWA—(Code Ann. 633.336 & 611.20) Wardlow v. Keokuk, 190 N.W.2d 439[1–2] (Iowa 1971). OREGON—(Rev.Stat. § 30.- 010) Jones v. Flannigan, 270 Or. 121, 526 P.2d 543, 546[6] (1974). PENNSYLVANIA —(Title 12, §§ 1601–04) Chambers v. Peter & A. J. Ellis, Inc., 104 Pa.Super. 41, 158 A. 583[5] (1932); Jenkins v. Beyer, 118 Pa.Super. 527, 180 A. 135, 137 (1935). WASH-

INGTON—(Rev.Code Ann. § 4.24.010) *Mieske v. Public Utility District No. 1,* 42 Wash.2d 871, 259 P.2d 647, 648[2] (1953).