**William White HUFF and Mabel Huff, Appellants,**

v.

**Woodrow Robinson TROWBRIDGE, Respondent.**

No. 54005.

Supreme Court of Missouri, Division No. 1.

April 14, 1969.

Robert Stemmons, Mt. Vernon, for appellants.

George M. Flanigan, Laurence H. Flanigan, McReynolds, Flanigan & Flanigan, Carthage, for defendant-respondent.

HENRY I. EAGER, Special Commissioner.

In this case William White Huff sued for personal injuries (Count 1, $25,000) and property damage (Count 2, $300); in Count 3 his wife, Mabel, sought $10,000 for loss of services and "consortium." A jury was waived and the court entered judgment for the defendant on all counts. The litigation arose out of a car-pickup truck collision on Highway 66 in Lawrence County on March 23, 1966. We shall refer to Mr. Huff as the "plaintiff," unless otherwise designated. He was turning his pickup to the left (south) off of Highway 66, when defendant, driving a Pontiac station wagon and seeking to pass, struck it. Plaintiffs alleged negligence in the following respects, among others; in attempting to pass within 100 feet of an intersection, failure to keep a proper lookout, failure to sound a warning, and excessive speed. They also alleged humanitarian negligence, but we need consider that no further, for no evidence was offered to support that claim and the question has not been briefed. Defendant denied as to each count all substantive allegations and pleaded generally that all injuries and damage were "caused or directly contributed to by the negligence and carelessness" of plaintiff William White Huff in the operation of his truck. No motion was directed at that allegation.

Defendant put on no evidence except photographs of the highway and the intersection. Consequently, there is no conflict in the evidence, except for slightly differing statements of plaintiff concerning distances. The scene was at the intersection of a north and south country gravel road with Highway 66 which runs east and west at that point. Plaintiff was traveling west in his 1964 Chevrolet pickup at about 20–25 miles an hour; he was alone except for his bird dog. The highway was concrete, 24 feet wide, and straight; the shoulders were approximately 12 feet wide. The day was dry, chilly and windy. Plaintiff lived about one-half mile south of this intersection on the country road. The view to the east (behind plaintiff) from this intersection was clear for a distance of six-tenths of a mile to the crest of a hill; the view to the west was approximately half a mile. There was a highway bridge approximately a quarter of a mile east of the intersection. Defendant was also proceeding west on Highway 66 some distance behind plaintiff; the distance or distances prior to the

time of the collision are not shown. Plaintiff's vehicle was equipped with inside and outside rearview mirrors.

Plaintiff, who was 58 at the time of the collision, testified: that "after" he crossed the bridge he turned on his left-turn signal light and "looked in the rearview mirror and didn't see anybody"; that he was traveling 20–25 miles an hour; that he "glanced back" again when he was perhaps 200–250 feet from the intersection (stated by him at another place in his testimony as 200–300 feet), saw nothing, and did not look back any more; that he drove on past the center of the intersection, and made an "abrupt" left turn at approximately 15 miles an hour; that when the front of his truck was about 4 or 5 feet off the slab he saw defendant's car 2 or 3 feet away, out of the "corner of his eye" and for the first time; the collision followed immediately. Plaintiff had no explanation for not seeing defendant sooner. The truck was struck chiefly at the left door, but the left front fender was also bent. The collision pushed plaintiff's pickup so that it ran into a rather shallow ditch, but it did not turn over; defendant's car came "off the same bank" but did not travel quite so far. Plaintiff was not able to judge defendant's speed during the instant in which he saw the car. Defendant had swerved to the south sufficiently to have his left wheels on the shoulder, for tracks 80–85 feet in length were found. No other traffic was involved or seen.

The Highway Patrolman who came made measurements and prepared a report. He testified: that defendant told him, "I was passing and saw his signal when I was in the passing lane, and I honked my horn and we both ran off the road"; that plaintiff told him, "I turned my blinker on and didn't see anybody coming, and turned into him." Mabel Huff testified that defendant said shortly after the collision that he was "flying low." Plaintiff testified that he heard no horn; all agree that it was very windy, and plaintiff's windows were closed. Defendant was given a ticket for passing at

an intersection and pleaded guilty in the magistrate's court. This was shown in evidence.

We have not outlined any of the evidence concerning plaintiff's occupations, earnings or injuries, nor is it necessary to do so. At the conclusion of the evidence defendant moved orally for judgment in his favor because plaintiff had failed to make a submissible case and specifically for the reason that plaintiff was guilty of contributory negligence "as a matter of law." The court stated that it was denying the motion "at this time." After defendant had rested, but almost immediately, his counsel orally requested findings of fact. The request may have been late, but the point is really immaterial, for the court nevertheless made and filed both findings and conclusions of law.

Both in the judgment and in its conclusions of law the court held that plaintiff was guilty of contributory negligence. In the conclusions the court further held that it was plaintiff's duty to keep a vigilant lookout so as to avoid turning into the path of oncoming vehicles, held that plaintiff could not assume that another vehicle would not be in violation of the rules of the road, and held that plaintiff's left turn, made without adequate lookout constituted negligence preventing his recovery even though the defendant was also at fault. In its findings of fact, the court first recited the facts, location and circumstances of the collision; it found that plaintiff did not see the "passing station wagon" until he had abruptly made his turn and when it was 3 or 4 feet from him and that there was no obstruction which would have prevented either party from seeing the other. The judgment was also for defendant on the wife's claim.

We are not concerned here with defendant's negligence. It is conceded that he was negligent in attempting to pass within 100 feet of the intersection. § 304.016, RSMo 1959, V.A.M.S.[1] The statute which di-

---

1. All statutory citations are to this edition.

rectly concerns the plaintiff's action is § 304.019, the first paragraph of which is as follows: "No person shall stop or suddenly decrease the speed of or turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after the giving of an appropriate signal in the manner provided herein." In seeking to negate contributory negligence plaintiffs' counsel cites the following Missouri cases: Myers v. Searcy, Mo., 356 S.W.2d 59; Reed v. Shelly, Mo.App., 378 S.W.2d 291; Robb v. Wallace, Mo., 371 S.W.2d 232; McDaniels v. Hall, Mo.App., 426 S.W.2d 751; and Langdon v. Koch, Mo.App., 393 S.W.2d 66. We have examined all of these in detail, but it is not necessary to set out the facts or the holding of each one separately. Each of those cases involved (in at least one view of the evidence) a left-turning driver, either plaintiff or defendant, and another motorist who was attempting to pass or who, in any event, pulled out to the left upon approaching the turning car. In all of those cases it was held that there was sufficient substantial evidence of negligence on the part of the left-turning motorist to make a submissible case of negligence against him. The Robb case is perhaps less applicable here on its facts than the others. Plaintiff apparently cites these cases as authority for the proposition that such negligence is a question of fact and is not to be decided as a matter of law. That, of course, depends upon the specific facts. In none of the above cases did the court consider whether the acts of the left-turning motorist constituted negligence as a matter of law; at least the opinions do not deal with that question. In Robb, such a contention was made and denied as to the overtaking or passing motorist.

These cases (and others which might be cited) hold: that a motorist intending to make a left turn on the highway must exercise the highest degree of care to ascertain whether the turn can be made with "reasonable safety"; that this duty includes the keeping of a careful lookout to the rear for overtaking or passing vehicles, and that he should not make the turn if another vehicle is in such position and traveling at such speed that the turn cannot be made with reasonable safety; that this duty requires such looking at a time or times when it will be reasonably efficacious (Langdon); that the driver must also give a signal for his turn; that he may not assume that someone else will not be in violation of the rules of the road, such as the act of passing at an intersection (Reed, Langdon, Pitts v. Garner, Mo., 321 S.W.2d 509, 1. c. 518); and, lastly, that § 304.019 does not require that the situation be "absolutely free from danger," or the maintenance of a "continuous observation to the rear" (Reed, supra).

Defendant cites the cases of Lands v. Boyster, Mo., 417 S.W.2d 942 and Moore v. Quality Dairy Co., Mo.App., 425 S.W.2d 261. These add little to the rules we have already noted; Moore emphasizes the duty to keep a lookout to the rear *and* to signal a left turn. That opinion reviews some of the cases which we have already mentioned. The case which is perhaps most like ours on the facts is Langdon et al. v. Koch, Mo. App., 393 S.W.2d 66 (cited supra), where the left-turning driver testified that he had looked to the rear from a certain point which was approximately 190–200 feet from the point of his turn and had seen nothing; that he did not look back again until he had begun his turn. The trial court, without a jury, found that his conduct in this respect was negligent. On appeal, the court held that the turning driver's acts did not constitute an "appropriate observation"; that one look was either too early or too casual, and the other was too late; that there *was* a car behind him and that it *did* strike him. The judgment on liability was affirmed.

Counsel for plaintiff argues in his brief, in effect, that the court should not have decided that there was contributory negligence as a matter of law, but in oral argument he was somewhat uncertain as to whether the court had done so. We are also a trifle uncertain on this score our-

selves, but the question is not really decisive. Counsel further say that plaintiff did fulfill his duty to make an "appropriate observation" which would seem to be a contention (since he was the only witness testifying) that there was no evidence of contributory negligence.

We now consider the question from the factual standpoint. The view at this location was almost unlimited, at least a half-mile. Plaintiff had two rearview mirrors. He testified that he had no explanation for not having seen defendant's car sooner. Plaintiff first looked back at about a quarter of a mile from the intersection, saw nothing and drove on (as he says with his signal light on); he testified that at a distance variously stated as from 200–250 feet and 200–300 feet he looked in the mirror again, saw nothing, and drove on without looking any more. At his speed the traveling of this 200–300 feet would have taken from 6 to 10 seconds. Plaintiff did not see defendant until his pickup was in large part off the highway in the course of his turn. It is an uncontroverted fact that plaintiff traveled the last 200–300 feet on the highway without any further effort to discover oncoming or overtaking traffic; and that he *then* made an abrupt left turn. In that turn plaintiff traveled (to the point of impact) approximately 20–25 feet; at his estimated speed of 15 miles an hour this (averaged at 22 feet) would take one second. It is entirely clear that defendant's car must have been in view for a substantial period of time *before* plaintiff started his turn; at 60 miles an hour it would have taken defendant approximately 15 seconds to travel from the bridge to the intersection; that car had been driven partially on the shoulder for a distance of 80–85 feet before the impact. And incidentally, the trial court may or may not have believed all of plaintiff's testimony.

■■ We do not hold that plaintiff was bound to keep his eyes "glued" constantly on his rearview mirror or mirrors, nor do we hold that there was an absolute duty on his part to see defendant's car before starting his turn. But we do hold and find that there was and is a reasonable inference of negligence on his part in driving the last 200–300 feet on an important state highway before making an abrupt left turn, without even glancing back, either in his mirror or manually. There is also a reasonable inference that his failure in this respect contributed directly to the collision. Plaintiff had no right to *assume* that the road would be clear of other traffic. Counsel argue to some extent about "blind spots" to the rear of a car; as we understand the matter, it is the function of an outside rearview mirror to eliminate those "spots," if properly used; but the point is not material here since it involves mere speculation. Liberally considered, the trial court here found contributory negligence as a factual matter. But this really makes little difference in the final analysis, for in the consideration of a jury-waived case on appeal we review the case upon both the law and the evidence as we would do in an equity case, and make our own findings and conclusions, giving due deference to the opportunity of the trial court to observe the witnesses and to determine credibility. Potts v. Vadnais, Mo., 362 S.W.2d 543; Paton v. Buick Motor Div., etc., Mo., 401 S.W.2d 446; Venie v. South Central Enterprises, Inc., Mo.App., 401 S.W.2d 495; Norman v. Durham, Mo., 380 S.W.2d 296; Independence Flying Serv., Inc. v. Ailshire, Mo., 409 S.W.2d 628. It is not correct to say that we are bound by the trial court's findings if there is substantial evidence to support them. Potts, supra, and other cases just cited; also Browder v. Milla, Mo.App., 296 S.W.2d 502. But, on the other hand, acting under our own Rule 73.01(d), V.A.M.R. we do not set aside the judgment unless "clearly erroneous." From the evidence we are convinced and we find, as undoubtedly the trial court did, that plaintiff William White Huff was guilty of negligence which directly contributed to the collision and to his injuries and damage. The judgment is *not* "clearly erroneous."

One point remains. The Missouri authorities state the rule that the wife may not recover on her collateral claim for the husband's injuries if he was contributorily negligent. This is because her claim is merely derivative. Elmore v. Ill. Terminal R. Co., Mo.App., 301 S.W.2d 44; Haverkost v. Sears, Roebuck & Co., Mo.App., 193 S.W.2d 357; 21 A.L.R.3d 469, note. In that annotation it is stated that all American jurisdictions support that rule. Plaintiff has not briefed separately the wife's right to recover, and therefore concedes the point.

The judgment of the trial court is affirmed.

PER CURIAM:

The foregoing opinion by EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.