R–WAY FURNITURE COMPANY, a Division of Franklin Industries, Inc., Plaintiff-Appellant,

v.

POWERS INTERIORS, INC., formerly Business Interiors, Inc., Defendant-Respondent.

No. 33634.

St. Louis Court of Appeals, Missouri.

June 12, 1970.

Armstrong, Teasdale, Kramer & Vaughan, John J. Cole, Fred Leicht, Jr., St. Louis, for plaintiff-appellant.

Green & Lander, Clayton, for defendant-respondent.

SMITH, Commissioner.

This is an appeal from the action of the trial court in sustaining defendant's motion for new trial upon the basis that plaintiff's verdict-directing instruction in a contract case was erroneous. The jury found for plaintiff in the amount of $14,528.38. Plaintiff contends here that the court initially erred in not directing a verdict for plaintiff. We will first examine this contention.

Since the facts are somewhat complicated a brief statement of the gist of the controversy may be helpful. Plaintiff supplied a quotation to defendant for furniture, which quotation formed the basis of defendant's successful bid as a sub-contractor. After acceptance of defendant's bid it became obvious that plaintiff's idea of the construction of the furniture and the architect's idea were not the same. As the case was tried resolution of this difference of opinion was not attempted but it does form

the background for the questions litigated. The furniture as eventually supplied, was in accord with the architect's ideas. The dispute between the parties on appeal is which of two purchase orders constituted the agreement between them, and the difference between the purchase orders lies in which party will bear the expense of conforming the furniture to the architect's wishes.

The litigation arose from the building of a dormitory by Centre College, Danville, Kentucky. Plans and specifications for that domitory were prepared by Murphy and Mackey, Inc., the architects, and were submitted to potential bidders. Plaintiff, located in Sheboygan, Wisconsin, is a manufacturer of furniture, including built-in dormitory furniture. Defendant and its predecessor were engaged in the business of purchasing and supplying furniture for business and institutional use, and is located in St. Louis. Defendant was interested in bidding on the built-in furniture for the Centre College dormitory and requested from plaintiff a quotation of prices for the furniture concerned. Plaintiff received the specifications, plans and addenda for the dormitory, including those covering the built-in furniture, which it examined before submitting its quotation to defendant. Plaintiff knew at the time of submitting its quotation in October, 1962 that defendant would use the quotation, if it were the lowest, in bidding on the Centre College job. Defendant received the subcontract for the dormitory furniture based on plaintiff's quotation. The quotation from plaintiff, although referred to frequently in the testimony, was not introduced as an exhibit. It did contain the words "R–Way Standard Construction." Thereafter, the precise time being unclear but in any event prior to April 1963, plaintiff submitted to the defendant and the architects its shop drawings for the furniture to be supplied. A conference ensued between the architect, plaintiff's salesman, and defendant's representative in which certain questions concerning the shop drawings were raised.

By letter of April 18, 1963, plaintiff's salesman posed these questions to plaintiff. For present purposes two sentences of that letter are relevant. Question 6 was: "Metal base specified on the cases, appears to be wood on drawings." Later in the letter appeared the following: "The steel chassis is not in evidence on the drawings, and they brought this to my attention."

Certain provisions of the specifications should at this time be noted as follows:

"3. MATERIALS

(i) *Steel Frames*: interior frames, chassis and exposed edge frames: 16 gauge cold rolled steel, including corner posts pilasters, parting rails, drawer center guides and other required members.

\*　　\*　　\*　　\*　　\*　　\*

"6. FURNITURE

(a) Furniture shall conform to size and profile indicated on the drawings. Items shown in plan and elevation are Simmons 'Dorm Line' as manufactured by Simmons Company, Contract Division, Chicago, Illinois. Comparable items, conforming to size and profile, as manufactured by one of the following will be considered equal: R–Way Furniture Company, Huntington Furniture Company

(b) *Wardrobe:*

\* \* \* Unit shall have steel base, firmly anchored to floor and freestanding type welded steel frame bolted to base which shall be anchored to adjacent room partitions for support. Enclosing panels: attached to steel frames with sheet metal screws from unit interior; \* \* \*."

R–Way standard construction includes metal frames in dressers, but does not include metal frames for wardrobes nor steel

chassis. Plaintiff's evidence indicated its standard construction could be determined from its catalogue. Defendant's witnesses denied knowledge that metal frames in wardrobes were not standard construction of R–Way and testified that in examining R–Way's quotation of October prior to submitting its bid, the quotation was checked against the specifications but not against R–Way's catalogue. Defendant also produced evidence that plaintiff's St. Louis salesman in April, 1963 indicated that the omission from the shop drawings of the steel frames and chassis in all units was "an oversight." The architect testified that this was a "custom" job which required adherence to the plans and specifications by the bidders regardless of what their standard construction was. He further stated that the "comparable" provision of paragraph 6(a) related to appearance, not to materials or construction, and that as to those matters the express specifications governed. He denied that any changes were made in the specifications after October, particularly none with regard to metal frames or chassis.

On May 14, 1963, defendant forwarded to plaintiff its purchase order for the built-in furniture a check representing ten per cent of the purchase price, and a cover letter. The prices contained in the purchase order were identical to those in plaintiff's October quotation. The cover letter contained the following: "It is understood that this furniture be made as specified including steel frame and steel bases. We are enclosing the architect's (Murphy and Mackey) check list of items to be included in your revised drawings."

Plaintiff kept defendant's check and furnished revised drawings to the architect, but no formal written acceptance or acknowledgment of the May purchase order was made nor does any express rejection appear. There was evidence that early in May, prior to the May purchase order, plaintiff told defendant it would not include or provide metal frames or chassis in the furniture. The plaintiff's holding of defendant's check was explained as: "We held the money until it was affirmed that the shop drawings would be approved by the architect."

Sometime after the May purchase order plaintiff and defendant entered into discussions regarding the steel frames and steel chassis. On July 3, 1963 defendant's representative requested a copy of the shop drawings as corrected "as we must have the steel wardrobe frames and the metal bases fabricated." On July 22, 1963, plaintiff wrote defendant setting forth certain revisions of the furniture claimed to be required by the architects and setting forth increased prices for the furniture because of these changes. The last paragraph of the letter read: "In order to proceed with the manufacturing of this furniture, we will require a revised Purchase Order with the prices on the attached sheet."

The "attached sheet" set forth the furniture to be furnished, with prices per unit higher than those in plaintiff's original quotation and the May purchase order. It also contained the following language:

"Lower section of wardrobe units shipped K.D. [knocked down] Price does not include metal interior framing, metal base or installation and hardware for installation of unit.

"Desk price includes metal legs and stretchers, but does not include metal base for drawer side section of desk.

"Metal base for chest not included in price.

"Hardware for installation and installation not included in prices."

Defendant introduced into evidence a letter dated July 23, 1963 from an attorney representing Centre College, which called to the defendant's attention the promised delivery date of September 1, 1963, and the "extremely large" damages to Centre Col-

lege which would result from the inability to give occupancy to students who had already rented the rooms. By letter dated July 26, 1963, defendant forwarded to plaintiff a purchase order for the furniture required at the prices set forth in plaintiff's letter of July 22, 1963. On August 9, 1963, and again on August 13, 1963, plaintiff wrote defendant concerning the metal frames in the following language: "This is to confirm our recent telephone conversation concerning the wardrobe interior frame on Centre College furniture. Per our conversation, your organization will ship these frames to R–Way and we are to install this frame work prior to shipment. Extra work for installation of this frame plus additional charge for transportation will be charged back to your organization."

No written response was received in answer to these communications by plaintiff, but defendant did ship the frames to R–Way; they were installed by R–Way and the furniture was shipped and installed at Centre College. R–Way then sent its invoice to defendant, based upon the prices reflected in the July purchase order in the total amount of $35,278.90 less the down payment for a balance of $31,963.90. By debit memo of October 3, 1963, it also billed defendant $1,659.90 as additional charges for assembly of metal frames to wardrobes for a total billing of $33,623.80. On November 21, 1963 defendant forwarded its check for $24,205.11 marked "Paid in Full Invoice No. 11–9061" which was refused by plaintiff. Defendant arrived at the amount which it paid by deducting from the amount of the May purchase order its cost of making and shipping the bases and frames in the amount of $4,793.71 and damages charged against it by Centre College for late delivery of $568.56 and additional specified damages of $278.42. It denied owing the amount of the debit memo of October 3, or the difference between the purchase orders of May and July. A year later plaintiff and defendant agreed to plaintiff accepting the tendered amount without prejudice to suit for the balance.

The court instructed the jury to return a verdict of $14,528.38, if it found for plaintiff, that being full principal and interest sought by plaintiff. This the jury did. Although there was additional evidence adduced, the above recitation is sufficient for purposes of passing on plaintiff's claim that it was entitled to a directed verdict.

Plaintiff's petition alleged that on May 15, 1963, the parties had entered into a contract and then identified the May 14 purchase order as that contract. It was then alleged that it was understood and agreed that there would be minor revisions in the contract and that the July 26 purchase order was the revised contract. Defendant's answer admitted the execution of the May purchase order contract, the down payment thereunder, denied all other allegations of the amended petition including execution of the July purchase order. The answer then specifically alleged in the alternative the July order was without consideration and such purchase order was executed solely because of plaintiff's improper refusal to manufacture and deliver the furniture called for in the May order at the prices set forth in the May order. Plaintiff at trial abandoned its contention that the May 14 purchase order was a contract and took the opposite position that it had never accepted the May order. Defendant raised no objection to this variance at trial nor on this appeal so that matter is not directly before us.

Defendant did read portions of that amended petition to the jury as admissions against interest on the theory the portions of the amended petition read had been abandoned. In view of plaintiff's trial theory those portions had been abandoned and reading them to the jury was proper. Carter v. Matthey Laundry & Dry Cleaning Co., Mo., 350 S.W.2d 786 [1, 2]. In determining whether plaintiff is entitled to a directed verdict we will consider the allegations of that petition which benefit defendant. Specifically, we consider para-

graphs 3 and 4 of that petition set out in the margin.[1]

 Despite plaintiff's trial position and evidence in support that the May purchase order never ripened into a contract because plaintiff failed to accept it, we believe a jury could have concluded the opposite. Initially, of course, there is plaintiff's admission contained in its amended pleading. Secondly, there is the retention, by plaintiff of defendant's down payment. This payment was retained, according to plaintiff's contract sales manager, upon a condition unexpressed to defendant, which was no part of defendant's purchase order —the approval of the shop drawings by the architect. This down payment was at no time returned to defendant. Subsequent to the receipt of the May purchase order plaintiff furnished revised shop drawings to the architect. Plaintiff's invoice referred to the number of the May purchase order not the number of the July purchase order. All of this evidence would support a jury finding that by its actions and course of conduct plaintiff had accepted the May purchase order and that a contract existed between the parties in May.

Having determined that there exists in this record factual support for a conclusion that the May purchase order constituted a contract between the parties, we must then look to what effect that contract had on the subsequent conduct of the parties. Plaintiff's pleaded position and to some extent trial position, was that the parties modified and revised their obligations which culminated in the July purchase order. It is clear that parties to an executory contract may revise or modify their contract prior to breach, so long as there is consideration for the revision or modification. Smith v. Githens, Mo.App., 271 S. W.2d 374 [17–20]; Lingenfelder v. Wainwright Brewery Co., 103 Mo. 578, 15 S.W. 844. Such consideration is not present where one party merely agrees to do that which it was already legally liable to do for a greater consideration, nor is it present where one party agrees to do less than it is already obligated to do for the same or greater consideration.

The following holding by the court in Lingenfelder, *supra*, states the rule: " * * * What we hold is that, when a party merely does what he has already ob-

1. "3. On or about the 15th day of May, 1963, plaintiff and defendant entered into a purchase order contract, defendant's P.O. No. 7947, dated May 14, 1963, by the terms of which plaintiff agreed to manufacture and defendant agreed to purchase certain items of 'built in' dormitory furniture for Centre College, ⌐Danville, Kentucky in the total amount of $33,-155.80. Defendant paid an advance deposit of $3,315.00 (approximately 10%) on the order at that time, a copy of said purchase order contract is attached hereto as Exhibit A and incorporated herein by reference. At the time of entering into said contract on or about May 15, 1963, it was understood and agreed by and between the parties that plaintiff was to prepare revised shop drawings for final architect approval and that there would be some minor revisions in the contract; that said understanding arⁱd agreements relating to revised shop drawings and revisions in the contract of May 15, 1963 were oral, but confirmed in writing, as shown by Exhibit A, page 2;

that, thereafter, pursuant to correspondence and telephone conversations between the architect, the general contractor, plaintiff and defendant, there were some changes made in the specifications, materials, finishes, hardware and design which were incorporated into revised shop drawings prepared by plaintiff and mailed to the architects on or about July 19, 1963; that by letter dated July 22, 1963, defendant was notified of the increased costs necessitated by the changes and revisions and defendant was further notified that plaintiff would require a revised purchase order relecting the increased costs and prices, all of which was agreed to by defendant.

"4. On or about the 27th day of July, 1963, a revised purchase order contract for said furniture, defendant's P.O. No. 9504, in the amount of $35,278.90, was made and entered into by and between plaintiff and defendant. A copy of said purchase order contract is attached hereto as Exhibit B and incorporated herein by reference."

ligated himself to do, he cannot demand an additional compensation therefor, and although by taking advantage of the necessities of his adversary he obtains a promise for more, the law will regard it as *nudum pactum*, and will not lend its process to aid in the wrong. * * *" (1. c. 15 S.W. 848).

Under the May contract specific reference is made to plaintiff providing steel frames and steel bases in the cover letter attached to the purchase order which is a part of the contract between the parties. That letter also states the furniture is to be made "as specified" and encloses the architect's check list of items to be included in the revised drawings. That check list was not placed in evidence. Plaintiff's letter to defendant of July 22, 1963, setting forth the reasons for the increase in cost over the May figures lists several revisions in the specifications. The architect denied any such revisions. Plaintiff's salesman when shown the July letter at trial testified that "I believe that most of this came up at the meeting with the architects," which meeting occurred in April. It is certain that at least the major "revisions" specified in the July 22, 1963, letter were known to plaintiff in April for they are referred to in plaintiff's salesman's letter to R–Way dated April 18. There was no evidence that any of the purported revisions were made after May or were unknown to the parties at the time of the May purchase order. In view of the testimony of the architect, plaintiff's salesman and the documentary evidence, a jury could conclude that none of the purported revisions set forth in the July letter came into being after the May purchase order or were the result of circumstances not contemplated when the contract was made. In this regard the analysis of this problem in Blakeslee v. Water Com'rs., 106 Conn. 642, 139 A. 106, is persuasive. It was there said:

"* * * And it may well be that broadly to admit the power of a contractor to exact additional compensation by refusing to continue performance would afford too many opportunities for exactions approaching very near to extortion. (Citing Lingenfelder, *supra*).

"Here the way is open for a distinction which commends itself at once to good sense and good morals. Where the contractor can justify his refusal to proceed with the contract by showing that he is confronted with circumstances not contemplated when the contract was made which render its performance impossible or unduly onerous and the promisor, being informed of the situation, induces him by a promise of additional compensation to proceed with it, the contractor's right to that compensation ought justly to be recognized." (1. c. 139 A. 111).

The furniture ordered by the May order and the July order is identical in description except with reference to the chests. In the July order these are described as "w/metal chassis" whereas such words are omitted in the May order. Since the May order included steel frames and steel bases[2], plaintiff did not by this provision assume any greater burden.

We are therefore confronted with a situation in which factual support can be found for the conclusion that the only change between the May and July purchase orders was an increase in price by plaintiff and a reduction by plaintiff of what it would provide, i. e., no metal framing and chassis in some of the furniture. Such facts would warrant a finding that the July purchase order was without consideration as it required plaintiff to do less than it was already legally obligated to do at a greater price.

But even accepting the proposition that the July purchase order constituted a valid contract between the parties another question arises concerning the relationship between the two purchase orders. The May

---

2. The words "bases" and "chassis" are used interchangeably throughout the record.

purchase order called for a delivery date of July 15 which concededly was not met. Also, although the testimony is not completely clear we believe a jury could find that prior to its letter of July 22 and also in that letter plaintiff refused to perform the May contract and so advised the defendant. If plaintiff had either by failure to perform or by anticipatory repudiation breached the May purchase order, the subsequent execution of a contract in July would not deprive defendant of its legal rights under the May contract. Harrison v. Missouri Pacific Railway Company, 74 Mo. 364; Luckey v. St. Louis & S. F. R. Co., 133 Mo.App. 589, 113 S.W. 703; Baker v. St. Paul Fire & Marine Ins. Co., Mo.App., 427 S.W.2d 281 [9, 10].

▮▮▮ As we have previously said the parties to a contract may revise or modify the contract or substitute a new contract for the old one so long as the old contract is executory and has not been breached. After breach they may enter into a new contract and provide that it shall serve to wipe out all liabilities incurred under the original contract. Smith v. Githens, *supra*, [20]. But where, after breach, a new contract is entered into the nonbreaching party does not lose its remedies for damages arising from the breach unless the parties so provide, which does not appear here. Here defendant in essence setoff its damages from the claimed breach of the May contract against the amount owed under the July contract, and predicates its defense to a suit for the set-off amount on the damages caused by the breach of the May contract. This it may do.

The facts in this case are sufficient to entitle defendant to go to the jury and we hold plaintiff was not entitled to a directed verdict.

Plaintiff's verdict-directing instruction was:

"Your verdict must be for plaintiff if you find:

"First: That defendant ordered from plaintiff the items of furniture shown on defendant's purchase order No. 9504 dated July 26, 1963 at the prices shown on said purchase order;

"Second: That plaintiff accepted such purchase order and manufactured, assembled, furnished and delivered all of the items of furniture referred to in such purchase order in accordance with defendant's instructions;

"Third: That defendant agreed to pay plaintiff all of the sums shown in said purchase order and the debit memorandum dated October 3, 1963 but has not done so.

Not in M.A.I.

Requested by Plaintiff."

▮▮▮ The trial court granted defendant a new trial on the basis that this verdict-director was erroneous because 1) it used the word "find" rather than "believe" and 2) it failed to include the word "and" after paragraph first and after paragraph second. We will not discuss the first ground because the second ground is correct and required the trial court to sustain the motion for new trial.

▮▮▮ It is fundamental that an instruction must be unambiguous and clear to a reasonably intelligent jury. It must tell the jury what ultimate facts it must determine in order to return its verdict. Where a jury is required to find each of several facts in order to return a verdict it must be advised in the instructions of that requirement. Here it was necessary for the jury to find each of the propositions submitted by paragraphs First, Second and Third. Its verdict could not properly be premised on an affirmative finding upon one or two of the propositions. Yet nowhere in the instruction is the jury so advised. The instruction as offered required the jury to determine whether the verdict should be based on all or less than all of

the propositions submitted without guidance from the court.

■ The determinative question in examining an instruction such as that before us is whether the paragraphs are so interrelated that a jury could have no doubt or no choice but to make a finding on each submitted fact. Gousetis v. Bange, Mo., 425 S.W.2d 91. The propositions here submitted are not so interrelated on their face to compel the conclusion that each must be found. To a jury, unversed in the law the instruction may reasonably be read to present three different bases of recovery, i. e., ordering, acceptance and manufacture, or agreement to pay. Although this was not an MAI instruction the general rules set forth in MAI govern. Leathem v. Longenecker, Mo., 405 S.W.2d 873 [5, 6]. The committee recognized that "some instructions will still have several elements which must be submitted in the conjunctive, but these will be in support of a single theory of recovery or defense." MAI 2d Edition, p. XXV. And see Moore v. Huff, Mo.App., 429 S.W.2d 1 and Slyman v. Grantello, Mo.App., 429 S.W.2d 282, holding the failure to include "and" between paragraphs prejudicially erroneous. The instruction was erroneous.

■ Plaintiff seeks to avoid the charge of prejudice by asserting that plaintiff's counsel brought the conjunctive requirement of the instruction to the attention of the jury in closing argument. Although we are not convinced this was as forcefully brought home to the jury as plaintiff contends, it makes no difference. The instructions are those of the court and are the only directions of law which the jury is bound to follow. Argument of counsel can neither expand nor decrease those directions, and can be totally ignored by the jury if it sees fit. To hold that the argument of counsel can correct an erroneous instruction is to remove the obligation of correctly instructing the jury from the judge to counsel and this we decline to do.

■ Plaintiff further contends that no prejudice arises from the giving of the instruction as all propositions contained therein were conclusively established by the evidence. We think not. The instruction purported to instruct the jury as to the ultimate facts which it must find to return a verdict in plaintiff's favor. The first two paragraphs refer to the items of furniture shown on the purchase order of July, but does not restrict the jury to that purchase order as the ordering document. The items of furniture ordered are the same in both purchase orders. It then requires the jury to determine that the ordering was "at the prices shown on said purchase order." The quoted language required a fact finding on one of the key issues in the litigation, the price at which the furniture was ordered and that was seriously in dispute, depending on which contract determined the rights of the parties. Whether plaintiff manufactured and delivered the items "in accordance with defendant's instructions" was also in dispute depending on which contract was in effect. Whether defendant agreed to pay "all of the sums" shown in the purchase order was also at the heart of the dispute. And whether defendant ever agreed to pay the amount of the debit memorandum was strongly contested. We cannot say the error in the instruction was not prejudicial as it allowed the jury to return a verdict upon an affirmative finding of only one of the three paragraphs.

The order sustaining the motion for new trial is affirmed.

PER CURIAM:

The foregoing opinion by SMITH, C., is adopted as the opinion of this court. Accordingly, the order sustaining the motion for new trial is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.