Alice **WILKERSON**, Plaintiff-Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Respondent.**

No. 9366.

Missouri Court of Appeals, Springfield District.

May 14, 1974.

James C. Bullard, Dalton, Treasure & Bullard, Kennett, for plaintiff-appellant.

James F. Ford, Ford, Ford & Crow, Kennett, for defendant-respondent.

HOGAN, Chief Judge.

This is an action upon the uninsured motor vehicle provisions of an automobile insurance policy issued by defendant State Farm Mutual Automobile Insurance Company to plaintiff's husband, Silas Wilkerson. Plaintiff obtained a jury verdict in the amount of $5,500. The trial court ordered a new trial on all issues 1) for error in giving Instruction No. 3, plaintiff's verdict directing instruction; and 2) for error in admitting plaintiff's testimony that she was the mother of five children. Plaintiff appeals.

Both parties have misjudged the posture of this case on appeal, and some preliminary comment concerning the scope of our review seems appropriate. In this court, plaintiff has limited herself to a discussion of the order granting a new trial; defendant, on the other hand, has concentrated on the submissibility of plaintiff's case, maintaining that the trial court should have sustained its alternative after-trial motion to set aside the verdict and enter judgment in accordance with its motion for directed verdict. We agree with plaintiff's assertion that the assignments of error directed to Instruction No. 3 in defendant's motion for new trial are not specific, and would probably preserve nothing for review on appeal, but plaintiff is mistaken in her assumption that the specificity requirements of former Rule 70.02, V.A.M.R., (applicable when this case was tried) and Rule 79.03 restrict the power

of the trial court to correct its own errors. Those rules apply only to appellate review, and neither they nor Rule 75.01 limit the trial court's authority to consider and rectify trial error during the 90 day period following the timely filing of an authorized aftertrial motion. Woods v. Kansas City Club, 386 S.W.2d 62, 63–65 (Mo. banc 1964); White v. Metropolitan Life Ins. Co., 218 S.W.2d 795, 798 [2] (Mo. App.1949). If the merits of the appeal depended solely upon the propriety of the order granting a new trial, we would review that action to determine from the law and the facts whether the trial court exercised a sound judicial discretion. Woods v. Kansas City Club, supra, 386 S.W.2d at 64 [2]; Coit v. Bentz, 348 S.W.2d 941, 945–946 [8] (Mo.1961). In this case, however, we are not limited to considering the correctness of the order granting a new trial, as plaintiff seems to assume. Defendant filed a motion for directed verdict at the close of plaintiff's evidence, stating as grounds therefor that the evidence showed plaintiff to be guilty of contributory negligence as a matter of law, and more generally, that plaintiff had failed to make a submissible case on any pleaded theory. This motion was renewed at the close of all the evidence, and the same contentions as to submissibility and contributory negligence were preserved in defendant's alternative motion for new trial or for judgment n.o.v. The trial court ruled on both aftertrial motions, granting a new trial for the reasons indicated but denying the motion for judgment n. o. v. We may therefore consider all of the contentions properly raised or assigned in all aftertrial motions, including whether or not defendant was entitled to a directed verdict. State ex rel. Hickory County v. Davis, 302 S.W. 2d 892, 898 [9] (Mo.1957); Hughes v. St. Louis Nat'l League Baseball Club, 359 Mo. 993, 996–997, 224 S.W.2d 989, 991–992 [1–3] [4, 5], 16 A.L.R.2d 904, 907–908 (banc 1949). Because trial errors are immaterial if plaintiff made no submissible case, Osborn v. McBride, 400 S.W.2d 185, 188 [1] (Mo.1966), we will first consider defendant's intricately specific assertion that plaintiff was guilty of contributory negligence as a matter of law because she suddenly turned left without first ascertaining that she could do so with reasonable safety.

The casualty which gave rise to this controversy occurred on Dunklin County Route "Y". Route "Y" is a two lane asphalt surface road, 22 feet wide; it runs generally north and south. Plaintiff was driving south on Route "Y", "going down to a neighbor's house . . . to buy some produce." To get where she was going, plaintiff had to turn left across the road into the neighbor's driveway. Either as she was turning or preparing to turn left, plaintiff's vehicle was struck from behind by another automobile driven by one Richard Jenkins. Plaintiff sustained personal injuries, but the nature and extent of those injuries are not in issue here.

Testimony received without objection from an investigating officer indicated that the accident happened about noon on a clear summer day. The officer fixed the "point of impact" in the west (southbound) lane of the road, approximately 14 feet north of the neighbor's driveway. The rear part of plaintiff's automobile was struck; as the officer put it, "there was extensive damage to the rear bumper, the trunk area, the undercarriage portion of the rear of the vehicle." Plaintiff's car could not be driven from the scene of accident. The left front end and the left front side of the overtaking or passing vehicle—the Jenkins car—was damaged. The officer was permitted to testify without objection that the Jenkins vehicle left 59-foot skidmarks leading up to the point of collision. In the officer's "best judgment", the road was straight and level for more than half a mile north of the place where the vehicles collided. Additionally, the officer testified on cross-examination: "Q. Did [plaintiff] tell you how far she had progressed into the turn at the time of the impact? . . . A. Mrs. Wilkerson stated that she had just attempted or was starting to attempt to make the left turn when the

impact occurred. . . . Q. Explain what you mean, she had just started or she had turned, *what did she say in that respect?* A. *To the best that I recall, Mrs. Wilkerson stated that the left front portion of her vehicle had not crossed the center line as yet.* Q. She told you that there at the scene? A. Yes, sir." (Emphasis added.)

Plaintiff also had the evidence of her passenger, who, in brief, testified that plaintiff was already "in the process" of turning when she was struck from behind. Plaintiff's left turn signal had been flashing "I'd say ten or fifteen seconds" before plaintiff started to turn. Being asked where plaintiff's car was when it was struck, this witness answered: "[Plaintiff] was in the process of turning, *so she'd, have to be almost kind of getting to the center of the highway* in her turn." Pressed as to her "best judgment" concerning "how much" of the plaintiff's vehicle was in the "left lane" when the collision happened, the witness answered "about half." (Emphasis added.)

Mr. Jenkins was called by the plaintiff. He was asked to tell the jury "generally how [the] wreck happened". His answer was, "Well, we were running along about —between 60 and 70 miles an hour, and I was setting [sic] there, you know, thinking about passing [plaintiff], and my mother was following me, I had stopped at my mother's house and had breakfast, and she was following me back out to the house to have lunch, and I glanced in the mirror to see where she was at, and, too, I'm thinking about passing, and just as I looked back, why, there [plaintiff] was, stopped or almost stopped in front of me." When Jenkins looked back to see if his mother was following, plaintiff's vehicle was "approximately 150 feet" ahead of him. When he resumed his lookout ahead, plaintiff was 60 feet in front of him. Jenkins had "laid down" skid marks, and had assisted the investigating officer when the officer measured the skid marks. Upon trial, Jenkins "[didn't] know how long the skid

marks were, but [the investigating officer] said from where I applied my brakes to where I was stopped was 59 feet, I believe he said." Jenkins hit the rear of plaintiff's automobile, in "his" lane of traffic.

Jenkins went over the accident again on cross-examination. As he approached plaintiff's car, he was "thinking" about passing. He approached at "between 60 and 70" miles per hour. As he proceeded south before the accident, plaintiff was going about as fast as he was. When he became aware that plaintiff was going to turn, he "shut down" his brakes; his "first thought was to go on and go around her, and then [he] seen [sic] she was turning, and then [he] tried to go back in behind her." Jenkins saw no signal from plaintiff. He had reduced his speed greatly at the time of collision, he said; at the time his vehicle struck plaintiff's car he "wasn't going over ten or fifteen miles an hour at the most."

Plaintiff testified in her own behalf. Being asked what kind of work she did, plaintiff answered, "I do all the housewife duties, I have five children, and I take care of those." Formal objection was made to this more or less voluntary statement, but after a conference out of the hearing of the jury, the trial court denied defendant's motion to declare a mistrial because of plaintiff's statement about her children.

Plaintiff was also asked by counsel to describe the casualty "in [her] own words", and she began by responding, "Well, I guess maybe 150 feet or something before I got ready to turn off I turned my signal on, and as I was making my turn this car hit me." Plaintiff also testified about her injuries, but it is her testimony concerning the accident which defendant stresses. We shall therefore set forth illustrative parts of plaintiff's cross-examination verbatim. Having posed several questions concerning plaintiff's injuries, counsel for defendant sought to devel-

op the facts of the accident. Plaintiff testified that before she slackened her speed in preparation for her turn, she was going "Oh, between 40, 45 miles an hour . . . *because that's just about as fast as I ever drive on that road.* . . . Q. As you were traveling down the highway, is it a fair statement that when you were approximately a half-mile back from where you turned, that you looked in your rear view mirror and saw this other vehicle behind you? A. Yes, sir. Q. Do you also have a mirror on the outside of your car? A. Yes, I do have. Q. Were they both in good working condition? A. Yes. . . . Q. There wasn't [sic] any obstructions, you could see all right out the back? A. I could see fine. Q. You saw this other vehicle approximately a half-mile before you turned off? A. Approximately that. Q. How far back of you was that vehicle at that time? A. *Sir, I really don't know. I know he was back a good ways from me.* Q. *Could you give the jury an estimate on it* . . . . A. He was better than ten car lengths, at least ten car lengths, *I know he would be that far* . . . . Q. What was the speed of this other vehicle at that time? A. *I have no idea."* (Emphasis added.)

Counsel then undertook to establish and did show that plaintiff looked to the rear only once before slowing to begin to turn. Plaintiff was asked her position relative to the neighbor's driveway when she began to turn. "Q. Just about directly across from it? A. *Just about like you are when you make a turn like that* . . . . Q. Where was your vehicle at the time that the impact occurred? . . . A. *Well, I would think that my front wheels was almost off of the pavement.* Q. Where were your rear wheels? A. *Well, they would have to be nearing the center line of the road."* (Emphasis added.)

■ Citing Huff v. Trowbridge, 439 S. W.2d 493 (Mo.1969); Lands v. Boyster, 417 S.W.2d 942 (Mo.1967); Langdon v.

Koch, 393 S.W.2d 66 (Mo.App.1965), and other precedents, the defendant strongly urges that upon this evidence the plaintiff should have been held guilty of contributory negligence as a matter of law because she did not take a "second look" to the rear to ascertain that she could turn left with reasonable safety. For several reasons, we cannot agree.

In the first place, we do not share the defendant's rigid view of the plaintiff's duty. The facts in this case are indeed similar to those reported in Huff v. Trowbridge, supra, 439 S.W.2d 493, and able counsel for the defendant obviously and artfully developed that similarity during the trial. Nevertheless, we do not read the *Huff* case as an attempt to reduce the duty of a left-turning motorist to a mathematical formula, nor to stand for the proposition that this plaintiff's conduct necessarily constituted contributory negligence as a matter of law, even if we accept as fact defendant's hypothesis that plaintiff abruptly turned left so as to block Jenkins' passage. In Williamson v. Winfrey, 444 S.W.2d 495, 498 (Mo.1969), the Supreme Court noted that it was not called on to decide an issue of contributory negligence as a matter of law in the *Huff* case, and the same was true in Langdon v. Koch, supra, 393 S.W.2d 66. In both *Huff* and *Langdon,* the reviewing court undertook only to decide whether or not fact issues found in a court-tried case were clearly erroneous within the meaning of Rule 73.01(d). In Reed v. Shelly, 378 S.W.2d 291 (Mo.App. 1964), this court was required to consider the duty of a left-turning motorist at some length, and that opinion, though turgidly written, still represents our views. Therein we concluded that the operator of a motor vehicle who intends to turn left must, among other things, make such observation of overtaking traffic as comports with the highest degree of care, Reed v. Shelly, supra, 378 S.W.2d at 297, but to reiterate, neither that case nor any of those cited by the defendant undertakes to state what constitutes a sufficient observation to the rear in rigorous or exact terms; whether a

driver has been negligent or contributorily negligent in failing to look in a particular direction at a specific time and has thereby failed to see all he should have seen is usually a jury question, Slaughter v. Myers, 335 S.W.2d 50, 54 (Mo.1960); Cox v. Moore, 394 S.W.2d 65, 70 [13] (Mo. App.1965); 61 C.J.S. Motor Vehicles § 526(11), pp. 879–881 (1970), and we believe it was such in this case.

■ Additionally, we must consider the tenor and probative effect of the evidence defendant relies on to establish contributory negligence as a matter of law. We have set out a great deal of the testimony at tedious and wearisome length precisely to show that the jury was presented with a composite of hearsay and conclusionary evidence, received without objection, and various "estimates" and "best judgments" dredged up from the witnesses' memories long after the event occurred. There are no diagrams, no photographs, no fixed points of reference, and with the exception of the investigating officer's testimony, no precise measurements in the record before us. Certainly, in answering some of the questions put to her, plaintiff was simply agreeing hesitantly to counsel's lengthy postulate. The issue might be resolved— somewhat artificially—on the basis of permissible inferences. The investigating officer's testimony might reasonably be construed to indicate that plaintiff's vehicle was still in the southbound lane of Route "Y" when it was struck from behind by the Jenkins automobile. The officer's testimony was hearsay and conclusionary, but it was received without objection. Our courts have never precisely defined the probative effect to be given hearsay or a witness' conclusions when received without objection, but they have held that both may be considered in resolving a fact question, Williams v. Cavender, 378 S.W.2d 537, 540–541 [1] (Mo.1964); Crampton v. Osborn, 356 Mo. 125, 135, 201 S.W.2d 336, 340 [7], 172 A.L.R. 344, 352 (1947); Hawkins v. Nixdorff-Krein Manufacturing Co., 395 S.W.2d 247, 250 [1] (Mo.App.1965),

so it might be argued that plaintiff was entitled to avail herself of the more favorable inferences to be drawn from the testimony of the investigating officer, since she was not bound by her own estimates of speed, distance, time or position. Migneco v. Eckenfels, 397 S.W.2d 682, 686 [7] (Mo. 1965). In candor, however, we have the view that the record evidence, which consists for the most part of "estimates", "best judgments" and other equivocations as to speed, distance, time and position, simply cannot be classified as absolute fact which the jury was bound to accept as true, and in this relatively simple case involving only primary negligence, deductions based on such evidence cannot convict the plaintiff of contributory negligence as a matter of law. Zumault v. Wabash R. Co., 302 S. W.2d 861, 864–865 [6] (Mo.1957); Young v. Missouri-Kansas-Texas R. Co., 100 S. W.2d 929, 934 [3–5] (Mo.1936); Johnson v. Bush, 418 S.W.2d 601, 605 [5] (Mo. App.1967); Jones v. Fritz, 353 S.W.2d 393, 399 [11, 12] (Mo.App.1962).

■ The defendant further questions the submissibility of plaintiff's case by asserting that plaintiff failed to make a substantial showing that the Jenkins vehicle was uninsured. We agree that it was incumbent upon plaintiff to prove that Jenkins was uninsured, Hill v. Seaboard Fire & Marine Ins. Co., 374 S.W.2d 606, 609 [1] (Mo.App.1963), but we do not believe the point is properly before us. Mechanically, defendant has taken the proper steps to challenge the submissibility of plaintiff's case. As indicated, a motion for directed verdict was filed at the close of plaintiff's evidence, renewed at the close of all the evidence, and defendant's contention that no submissible case was made was reasserted in its alternative aftertrial motion for judgment n. o. v. Such was a proper procedure to challenge the sufficiency of the evidence to support the submitted grounds of liability, and if the assignments of error in the alternative aftertrial motion were specific, we would be required to consider whether plaintiff made a submissible case

upon the grounds submitted to the jury. Millar v. Berg, 316 S.W.2d 499, 502 [1] (Mo.1958); Farmer v. Taylor, 301 S.W.2d 429, 434 [9] (Mo.App.1957); Girratono v. Kansas City Public Service Co., 243 S.W. 2d 539, 543–544 [1–4] [5, 6] [7–9] (Mo. App.1951), Id., 363 Mo. 359, 251 S.W.2d 59 (1952). Nevertheless, though our courts have been liberal in construing assignments raising the sufficiency of the evidence where the defect of proof is obvious, Gillenwaters Building Co. v. Lipscomb, 482 S.W.2d 409, 411 [1] (Mo.1972), the rules contemplate that a party moving for a directed verdict or for judgment n. o. v. in an aftertrial motion state his grounds with some particularity; the bare assignment made here, that plaintiff "has not made a submissible case under any propounded theory as to this Defendant" is insufficient to preserve anything for review. Quality Dairy Co. v. Openlander, 456 S.W.2d 608, 609 [1] (Mo.App.1970). We might, of course, review the submissibility of plaintiff's case as a matter of plain error, Millar v. Berg, supra, 316 S.W.2d at 502–503, but we have not been asked to do so, and decline to do so sua sponte. We conclude that the trial court properly denied defendant's motion for a directed verdict.

The remaining question is whether the trial court exercised a sound discretion in granting a new trial. One of the specific grounds stated was that there was error in Instruction No. 3.

Instruction No. 3, which was plaintiff's verdict directing instruction, reads as follows:

"Your verdict must be for Plaintiff if you believe:

First, Plaintiff was involved in an automobile collision on July 9, 1971, with a vehicle operated by Kenneth Jenkins.

Second, that Kenneth Jenkins failed to keep a careful lookout.

Third, that Kenneth Jenkins was thereby negligent.

Fourth, that as a direct result of such negligence the plaintiff sustained bodily injury.

Fifth, that the Jenkins' vehicle was an uninsured motor vehicle at the time of the collision.

Unless you believe Plaintiff is not entitled. to recover by reason of Instruction No. 5."

For various reasons, our courts have several times held that omitting the conjunction "and" between paragraphs of an MAI verdict directing instruction creates prejudicial error. Motsinger v. Queen City Casket Co., 408 S.W.2d 857, 860 (Mo. 1966); Quality Dairy Co. v. Openlander, supra, 456 S.W.2d at 609–610 [3]; Slyman v. Grantello, 429 S.W.2d 282, 283 (Mo. App.1968); Moore v. Huff, 429 S.W.2d 1, 4 (Mo.App.1968). The rationale of those cases need not be explored here. Instruction No. 3 was not an MAI instruction—at least counsel so stated—but it was of course governed by the general principles set forth in Rule 70.01 and the MAI, and the determinative question in examining this instruction is whether the paragraphs are so interrelated that a jury could have no doubt or no choice but to make a finding on each submitted fact. R–Way Furniture Co. v. Powers Interiors, Inc., 456 S. W.2d 632, 640 [13, 14] (Mo.App.1970). The propositions submitted in Instruction No. 3 are not so interrelated as to compel the conclusion that each must be found, and for that reason we conclude that Instruction No. 3 was erroneous. R–Way Furniture Company v. Powers Interiors, supra, 456 S.W.2d at 640 [13, 14]. We may also note that while this error was not specifically assigned in the motion for new trial, defendant did assert that Instruction No. 3 was confusing and misleading. We think the trial court might well have found that it was, and certainly the prejudicial effect of the instruction was primarily a matter for the trial court to judge. In such circumstances, a reviewing court must look with liberality upon the action of the

trial court in granting a new trial, Zacher v. Missouri Real Estate & Ins. Agency, 393 S.W.2d 446, 452 [6–8] (Mo.1965); Coit v. Bentz, supra, 348 S.W.2d at 945–946 [8], and in our opinion, the motion for new trial was properly sustained for error in giving Instruction No. 3. Since this disposes of the appeal, we need not discuss the possibly erroneous reception of plaintiff's testimony about her family.

For the reasons indicated, the judgment is affirmed.

STONE and TITUS, JJ., concur.

BILLINGS, J., took no part in the consideration or decision of this case.