**Donald Dennis MILLER,
Plaintiff-Respondent,**

v.

**Billy Dan SIMS, Defendant-Appellant.**

**No. KCD 27840.**

Missouri Court of Appeals,
Kansas City District.

July 6, 1976.

Michael J. Maloney, Popham, Popham, Conway, Sweeny & Fremont, P.C., Kansas City, for defendant-appellant.

Robert L. Shirkey, James E. Chumley, Kansas City, for plaintiff-respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

TURNAGE, Presiding Judge.

Donald Miller brought suit against Billy Sims to recover damages resulting from an automobile collision. Following a jury verdict in favor of Sims, the court granted Miller a new trial on the ground the verdict was against the weight of the evidence and for the erroneous admission of certain evidence. Sims appeals the order granting a new trial on the sole ground Miller failed to make a submissible case because his own evidence proved he was contributorily negligent as a matter of law. Affirmed.

On this appeal the evidence must be viewed in the light most favorable to Miller and the order granting a new trial may not be disturbed unless it can be said the evidence would not support a verdict in favor of Miller. *Leonard v. Bartimus*, 463 S.W.2d 579 (Mo.App.1971).

Miller's evidence came wholly from his own testimony. He stated he lived on the east side of Missouri Highway 131. At the time of the accident it was light, the weather was warm and the highway dry. Miller was going from his house to the home of a babysitter to pick up his children. The babysitter also lived on the east side of Highway 131 about 660 feet south of Miller's house.

As Miller pulled onto the highway, which was a two-lane blacktop road, he observed Sims about a quarter of a mile to the north. At this time Miller made no estimate of Sims' speed. Miller proceeded south in his own right lane with a maximum speed of 30–35 m. p. h. When he was about 150–200 feet north of the babysitter's driveway, he looked in his rear view mirror and observed Sims at about Miller's driveway, which would put Sims about 400–450 feet at the rear. Again Miller made no estimate of Sims' speed.

Miller stated there was no erratic driving on the part of Sims and he observed nothing to rouse his fear of the manner in which Sims was driving.

At the time Miller saw Sims at about Miller's driveway, Miller stated he turned his left-turn signal on and it was working properly. He also extended his left arm from his open window. When Miller was from 40 to 50 feet north of the babysitter's driveway, he started to cross the centerline to make his left turn. Up to this point Miller denied ever hearing any horn sound or any other warning that Sims was going to pass. However, as Miller started to cross the centerline, he heard a screeching of brakes, then saw Sims' car streak by on the left. The Sims' car struck the Miller car on the left rear fender and after some sideswipe contact, the Sims' car proceeded to hurdle a culvert then rolled over twice and came to rest on its wheels.

Miller testified there was visibility all the way between his driveway and the babysitter's driveway. He further stated he did not look in his rear view mirrors again after he saw Sims about 400 feet to his rear, at a time when Miller was about 150–200 feet from the babysitter's driveway.

Sims predicates his entire argument of Miller's contributory negligence on this failure to look in the rear view mirrors to determine the location of Sims' vehicle immediately before Miller started to make his left turn. He further urges Miller could not have safely made his left turn without looking to determine the location of Sims at

that moment so he could make a judgment as to whether his left turn could be made in reasonable safety.

Sims relies on *Myers v. Searcy,* 356 S.W.2d 59 (Mo.1962) and *Reed v. Shelly,* 378 S.W.2d 291 (Mo.App.1964). Neither of these cases involved the question of contributory negligence as a matter of law. *Myers* considered the duty imposed upon a driver making a left turn to keep a lookout. *Reed* also considered the duty of a left turning driver to keep a lookout. Neither case supports Sims' argument that Miller was contributorily negligent as a matter of law.

The case most similar on its facts is *Wilkerson v. State Farm Mutual Automobile Ins. Co.,* 510 S.W.2d 50 (Mo.App.1974). There the court considered the question of whether a left turning driver was contributorily negligent as a matter of law for failure to take a "second look" to the rear to ascertain whether she could turn left with reasonable safety. In that case, as in the case at bar, the plaintiff was driving the forward vehicle and the defendant was passing to plaintiff's left. There also the plaintiff had seen the defendant to her rear some distance before she started her left turn, but did not again look in her rear view mirrors to determine the defendant's location immediately prior to making a left turn.

In *Wilkerson* the court stated at 510 S.W.2d 54[4]:

"Therein (*Reed v. Shelly*) we concluded that the operator of a motor vehicle who intends to turn left must, among other things, make such observation of overtaking traffic as comports with the highest degree of care, *Reed v. Shelly,* supra, 378 S.W.2d at 297, but to reiterate, neither that case nor any of those cited by the defendant undertakes to state what constitutes a sufficient observation to the rear in rigorous or exact terms; whether a driver has been negligent or contributorily negligent in failing to look in a particular direction at a specific time and has thereby failed to see all he should have seen is usually a jury question (citations omitted), and we believe that it was such in this case."

Sims seeks to convict Miller of contributory negligence as a matter of law for failing to look in his rear view mirrors after seeing Sims about 400 feet to his rear with no indication of erratic driving at a time when Miller says his left turn signal was indicating a left turn and his left arm was extended to further indicate a left turn. As was so aptly stated in *Wilkerson,* the cases have not sought to define in rigorous or exact terms at what precise point a motorist should look in his rear view mirrors nor how often he should look. These questions can and do vary from case to case and are generally left for resolution by a jury.

This court must say from all of the evidence in this case favorable to Miller that reasonable and disinterested minds could rightfully disagree on the question of whether or not Miller failed to exercise the highest degree of care in the operation of his automobile. In that circumstance it cannot be held that Miller was contributorily negligent so as to bar his recovery. *Brooks v. Stewart,* 335 S.W.2d 104 (Mo. 1960).

The order granting Miller a new trial is affirmed.

All concur.